SECOND NATIONAL BANK OF NEW HAMPTON, Appellant, v. FRED W. HULTS, Appellee.

**BILLS AND NOTES:** Denial of Signature—Jury Question. Evidence
1 held to present a jury question on the issue whether defendant signed the note in question.

**BILLS AND NOTES:** Unauthorized Signature—Ratification—Evidence.
2   Evidence held to present a jury question on the issue whether an
   unauthorized signature had been ratified and adopted.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

APRIL 6, 1921.

ACTION on a note. Trial to a jury. Verdict and judgment
for the defendant. Plaintiff appeals.—*Affirmed.*

*Remley & Remley,* for appellant.

*George C. Gorman,* for appellee.

PRESTON, J.—This action was brought December 3, 1918,
upon an alleged promissory note, dated December 24, 1917, for
$1,000, payable to T. F. Danaher, a land broker in Minneapolis.
Plaintiff claims that defendant signed the note, and that it was
an innocent purchaser and holder; that it purchased the note
from Danaher February 4, 1918. The defendant, in one count
of his answer, denied under oath that the signature to the note
was his signature; denied generally all other allegations of the
petition; alleged further that, if he did sign the note,—which,
to the best of his knowledge, he never did,—it was in consequence
of fraud, by intoxication, practiced upon him by Danaher; and
denied that plaintiff was an innocent holder. In another count,
he alleged that Danaher had failed to convey the land to de-
fendant, under the alleged contract, and that the deal had been
canceled and defendant released by Danaher in writing, and
the contract canceled, by reason of which there was an entire ab-
sence and failure of consideration. Evidence was received bear-
ing on all these matters, and, at the close of all the evidence,
plaintiff moved to withdraw Counts 2 and 3 from the considera-
tion of the jury, and for a directed verdict for plaintiff. The
court held that plaintiff was an innocent holder, and sustained
the motion as to Counts 2 and 3, but submitted to the jury the
question as to whether or not the alleged signature on the note
was the signature of defendant, or whether it had been ratified
by him, as claimed by plaintiff.

The evidence in the record, introduced on other defenses, may have some bearing upon the question as to whether the signature to the note was a forgery,—that is, bearing upon the reasonableness of the testimony of the different witnesses, and bearing upon the probabilities. The main point in the case is whether the evidence was sufficient to take the case to the jury. The evidence is set out fully in the abstract. Since it is so much a question of fact, we think it sufficient to set out some of the more important evidence introduced on behalf of defendant, which, though contradicted by plaintiff's evidence, makes a jury question. The burden is upon plaintiff to show the genuineness of the signature. This was the second trial and verdict for the defendant.

1. The statement of some preliminary facts may be helpful. Defendant was born in Germany, 50 years ago. He was 22 years of age when he came to America, since which time he has been continuously engaged in farming. He never attended school in this country, and quit school in Germany when he was 14; and he does not understand the English language well. He had acquired some property, and owned a considerable tract of land in Montana. Danaher owned 240 acres in Minnesota, and a property in Anamosa. There had been some talk between them about exchanging lands, prior to December 18, 1917. On that date, Danaher wrote defendant from Minneapolis in regard to the trade, and defendant went to Minneapolis, December 22d, Saturday night. The next day, the parties, with another, went to the Danaher land, 80 miles distant, and defendant looked it over. Upon their return to Minneapolis, Sunday night, there was further talk about the deal, but defendant desired to first talk the matter over with his wife and family, at home. He was to leave for home in the morning, but missed his train; and, about 11 o'clock in the morning, Monday, December 24th, he went to Danaher's office. Plaintiff claims that the terms were agreed upon, and that a contract was dictated to Buggy, Danaher's brother-in-law, and prepared on the typewriter in duplicate. Plaintiff claims that defendant made some objections, which were met, and that the contract and note in suit were executed. The defendant testifies that he signed no notes, contracts, or

*1. Pleading: denial of signature: jury question.*

papers of any kind in Danaher's office on December 24th; that he never signed the note in suit, or contract; that he never authorized anyone to sign the note sued on; that it is not his signature; that he never saw said note or contract when he was in Danaher's office; that he never signed the duplicate of the alleged contract, but that, when he got home, he found it in his inside overcoat pocket, a few days thereafter, and that he never saw it before; that he showed it to his wife, but she could not make out what it was, and that he could not tell what it meant; that he left his overcoat hanging there in the closet (at Minneapolis), and Danaher took it out. He says that he never showed the alleged duplicate to anyone except his wife and children; that he brought it to town when the lawsuit was started. On cross-examination, he says that he didn't go and see someone about it, because he didn't think he had to, as long as it wasn't his signature. Defendant's wife corroborates him in part as to this transaction, as to the discovery of the papers in his pocket, and that she read all she could of them, but couldn't understand. He testifies further that, when he was in Minneapolis, in September, afterwards, Danaher stated to him that he had nothing against defendant, and gave defendant a paper to that effect; that Danaher did not tell him at that time that the note was held by the plaintiff bank. The county treasurer, after qualifying as an expert, testifies that, in his opinion, the signature to the note in suit is not the signature of the defendant. Another witness, an assistant cashier in one of the banks, and county treasurer and deputy for 18 years, gave similar testimony, as did the county auditor, and the cashier of another bank. These witnesses testify as to their acquaintance with the defendant, and with signatures generally. They do not speak with as much positiveness, in giving their opinion, as does plaintiff's principal expert, who states that the occupation he is following is photography, scientific, and examination and photography of handwriting, and who has made a study of expert handwriting, and has been engaged in that business, as a business, for a year, but whose business prior to that was scientific photography, which he had followed for several years. He testifies at length as to measurements, and to his technical knowledge, comparison, and so on. This witness states that, in his opinion,

the signature in dispute is that of defendant. Appellant argues that the evidence of this expert scientifically demonstrates, to a mathematical certainty, that the signature on the note in suit is the signature of the defendant. The witness himself does not estimate his ability quite so high; for he says that, after he has made the examination and the measurements, it is an opinion and conclusion, and not a statement of an actual fact. This, we think, is substantially the view of judges and laymen. The defendant denies that he signed the note in suit, and another note of $500 alleged by plaintiff to have been given at the same time. The expert assumed that these two signatures were made by the same person, but conceded that there was a distinct difference between the two, and that such difference would be out of the ordinary, and such as to strike his attention, and call for some kind of an explanation. Two others, witnesses for plaintiff, one a cashier and the other a vice president of a bank, and the president of plaintiff bank, give their opinion that it is defendant's signature.

Numerous exhibits, conceded to have the signature of defendant attached, were introduced in evidence, and comparisons were made by the witnesses and the jury. Danaher and some of his relatives and employees testify as to seeing defendant sign the different papers in Danaher's office in Minneapolis, December 24th, including the note in suit. Some of them, however, qualify somewhat their statements as to being present and seeing the papers signed. The exhibits and photographs have been certified to this court. Even though we, if we were the triers of fact, might think that plaintiff had the weight of the evidence in its favor, it is manifest from the brief statement we have made as to the record that there is more than a mere scintilla of evidence on behalf of the defendant, and that there is a substantial conflict in the evidence, which was for the jury. There are circumstances on either side tending to corroborate or qualify and weaken the evidence of the different witnesses. We have not attempted to go into details, and we deem it inadvisable to do so. The evidence and the circumstances and sidelights bearing upon the weight of the evidence of the different witnesses and the probabilities are elaborately argued by both sides. The credibility of the witnesses was, of course, for the

jury. Under the record, the evidence was sufficient to take the
case to the jury, and the court did not err in overruling plain-
tiff's motion for a directed verdict, or in overruling plaintiff's
motion for judgment notwithstanding the verdict. Numerous
cases are cited by appellant on the well-established rules that a
verdict without support shall be set aside; that the fact that the
verdict is a second one in favor of defendant is not a sufficient
reason for not setting aside the jury verdict, when it is not
based upon sufficient proof; that, if the verdict is the result
of passion and prejudice, the verdict should be set aside; that
the instructions, right or wrong, must be followed, and so on.

2. Appellant contends that it is the general weight of
authority that a forged signature may be ratified and adopted,
and that the alleged signer may be estopped by his conduct to
deny the genuineness of the signature. On this
they cite *Myer v. Wegener,* 114 Iowa 74; *First
State Bank v. Williams,* 143 Iowa 177, 179; and
other cases. The contention is that, under the
record, these matters have been sustained, and that, as a matter
of law, the court should have so held, and directed a verdict for
plaintiff. The more important facts relied upon by appellant
are that defendant, by an amended answer, which was introduced
in evidence, pleaded that the executory contract for the exchange
of land between defendant and Danaher was fully canceled and
terminated, and that defendant was released and discharged in
writing from all obligation or liability thereon or therein, and
that thereby there was an entire failure of consideration for the
note sued on, etc. For reply to this, the plaintiff alleges that
such cancellation amounted to a settlement between the parties,
and that, by a settlement, defendant recognized the signature
to the note in suit, and its validity. This was in September,
after plaintiff purchased the note in February. Other matters
relied upon on this question of estoppel are that defendant
caused Danaher to come to Anamosa on January 10, 1918, and
to go to Cedar Rapids, and that this was a loss of time and an
expense, which would not have been made if Hults had denied
the signatures when first brought to his attention; that, in March,
1918, after plaintiff bought the note, Danaher wrote several
letters to defendant, at a loss of time and at an expense, and

2. BILLS AND
NOTES: unauthor-
ized signature:
ratification: evi-
dence.

placed Danaher in a different situation by selling the $500 note to one person and the $1,000 note to the plaintiff; that, if defendant had spoken up, Danaher could not or would not have done any of these things. So far, the evidence is as to what occurred between defendant and Danaher, and with this the bank had no connection, unless, perhaps, it be in regard to the pleadings before set out. As to that, defendant had pleaded inconsistent defenses, and the matter referred to was in reference to the cancellation, and therefore a failure of consideration. It was not necessarily conclusive on the question of forgery, and the jury could have found, under all the evidence, that there was no ratification by defendant of the alleged forged signature. The pleading offered in evidence was a circumstance to be considered by the jury, with the other evidence in the case. *City Dep. Bank v. Green,* 138 Iowa 156, 164; *Sievertsen v. Paxton-Eckman Chem. Co.,* 160 Iowa 662; *Doyle v. Burns,* 123 Iowa 488, 502; *Davidson Bros. Co. v. Smith,* 143 Iowa 124; *Treadway v. S. C. & St. P. R. Co.,* 40 Iowa 526. As to the next point, the defendant and his wife, who was with him, contradict the testimony of Danaher; and, as we understand the record, Danaher was at Anamosa or Cedar Rapids to advise with defendant in regard to another case. Defendant and his wife say that there was something asked by Danaher as to whether defendant wanted to make a deal, and defendant, or his attorney, spoke up and said defendant did not want to make a deal; and that Danaher said, "All right." At any rate, they testify that Danaher did not, at that time, say anything about having a contract and note against defendant, and that Danaher did not show any contract or notes in Wheeler's office at Cedar Rapids. The letters referred to were written after plaintiff purchased the note. Danaher himself says that there was no contract shown; that the discussion was about a lawsuit; that there were no notes shown there. Thus far, then, the jury could have found that Danaher had not made a claim that defendant had executed and delivered the note to him; that he made no reference to note or notes, in his letter of December 31, 1917, or to defendant's attorney on the 27th; but that, on the contrary, he was urging defendant to make a deal, when they were at Anamosa and Cedar Rapids. The appellant took no part in the transactions between

defendant and Danaher, prior to its purchase of the note, and there is no evidence that the bank knew that such transactions had taken place, until after this action was commenced. As to what took place after plaintiff purchased the note sued on, appellee contends that there is nothing to show that appellant changed its position in any way, because of what defendant said or did, or that it was prejudiced. On this they cite *Ford v. Ott,* 186 Iowa 820, *Jamison v. Auxier,* 145 Iowa 654, 655, and other cases, and they cite the *Ford* case to the proposition that, to constitute a waiver, two things are essential: First, knowledge of the existence of the right; and second, intention to relinquish it. *Sanders v. Sutlive Bros. & Co.,* 187 Iowa 300, is also cited to the proposition that without knowledge there can be no ratification; and appellee contends that, under the record, he had no knowledge that either Danaher or plaintiff was claiming that they had such a note until about the time, or soon before, this suit was brought. Other cases are cited to the point that recognition, to have the effect of making valid an instrument which, but for ratification, would be void, is to be clear and express, or implied from circumstances equally clear and undisputed. *Seiffert & W. Lbr. Co. v. Hartwell,* 94 Iowa 576, 583, and other cases. The president of appellant bank, who negotiated the note, testifies that he knew nothing about its having been given in connection with the sale of land; that he didn't know anything about how the note was obtained; that he did not see the contract.

It is next contended by appellant, on the question of estoppel, that, after plaintiff had purchased the note, it promptly notified defendant, on February 4, 1918, of its purchase of the note; and that defendant failed to deny the signature, or to claim it was a forgery; and that thereby it was misled; and that, in October, 1918, appellant wrote defendant that the note was coming due, and that it was sending it to another bank, where he could pay it; and that such other bank notified defendant to come in and pay it; that defendant then came in and looked at the note, at the Niles & Watters Bank; and that defendant, without denying the signature, said that the company (Danaher) owed him more than he owed the company. But here again there is a conflict in the evidence. The officer of the plaintiff bank

who testifies in regard to sending the notice says that he "thinks they sent a notice to defendant some time after February 4th. I have nothing here to show. We make a habit of sending notices to outside people." He does not testify with certainty that a notice was sent, and defendant testifies that he never received any letter from the plaintiff bank. His wife says that no such letter ever came to their house. Defendant and his wife testify that a notice was received from the Niles & Watters Bank, which was the first time they had ever heard that there was claimed to be such a note. The defendant testifies that, after he received the notice from the Niles & Watters Bank, he, with his attorney, went to the bank, where defendant said that it was not his note; that that was the first time he ever saw that note; that, shortly after that, he received a notice from plaintiff's attorney, and he thinks he went up to the attorney's office; that he told him he did not sign the note at all.

There is another circumstance that should have been referred to, and that is that one Buggy made a visit to Anamosa in the latter part of March, 1918; but Buggy says that nothing was said about the notes. There was something said about wanting to make a deal. There is a conflict in the testimony as to what occurred when defendant went to Minneapolis in September, 1918. We have not attempted to detail any considerable part of the evidence; but, under the record, we think that, so far as plaintiff is concerned, there was a jury question on these questions of waiver, ratification, and adoption. Counsel for appellant discuss these three and estoppel, as synonymous. The court instructed fully as to ratification, and we do not understand appellant to complain of the form of the instructions on this feature of the case.

3. It is argued by appellant that the verdict is contrary to the instructions of the court; but we take it from the argument that this is on the assumption by appellant that their evidence is undisputed, or conclusively establishes that defendant signed the note. The prior discussion in the opinion disposes of this question.

It is further contended by appellant that, though the court instructed as to forgery and ratification of the note after its execution, the court failed to instruct specifically as to estop-

pel. The argument is that thereby the court failed to instruct the jury that the facts and circumstances of the case which also make and constitute ratification may be considered by the jury as circumstances and evidence that the signature was written by appellee, as set out in requested Instructions 12 to 15. We have stated the proposition as counsel state it in their argument. But the proposition as stated does not raise the question of estoppel, but only whether the signature was written by defendant; and the four instructions requested and just referred to, after stating the different circumstances, end with the statement that such conduct on the part of defendant might be considered as tending to establish the fact that the defendant did, in fact, sign said note. This matter was properly covered by the court in the instructions given. The argument is brief at this point. We are inclined to think that, strictly speaking, there was no evidence of change of position, prejudice, or estoppel shown by the evidence.

The instruction of the court in regard to expert testimony is criticised, and particularly the clause in reference to the jury's making comparisons. The thought is that, because this instruction was the last one given, the jury might eliminate all other testimony in the case, and determine the issues by their own comparisons. We think the instruction is not susceptible to the construction placed upon it by appellant. The instructions must all be considered together.

We discover no prejudicial error, and the judgment is— *Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.