EMIL PLAGMANN et al., Appellants, v. THOMAS J. BRAY, Appellee.

**ATTORNEY AND CLIENT:** Duties and Liabilities—Recovery of Fraudulently Induced Fee. A plaintiff who seeks to recover the entire amount of a fee paid to defendant as an attorney, on the allegation that the payment was fraudulently induced, must *allege* and *prove* either (1) that the attorney performed no services, or (2) that the services performed were of no value.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

MAY 9, 1922.

ACTION based on fraudulent representations inducing plaintiffs to enter into a contract to pay defendant, for services to be performed, an attorney fee in the amount of $5,000, and to collect from defendant the $5,000 which had been paid to defendant. At the close of plaintiffs' testimony, on motion of defendant, a verdict was directed. Plaintiffs appeal.—*Affirmed.*

*S. V. Reynolds* and *McCoy & McCoy,* for appellants.

*Thomas J. Bray* and *John E. Lake,* for appellee.

ARTHUR, J.—Emil Plagmann, one of the appellants, was indicted by the grand jury of Keokuk County under Section 2 of Chapter 372, Acts of the Thirty-seventh General Assembly, with the crime of seditious misdemeanor, in that said Plagmann "did willfully and unlawfully by speech, argument, and conversation attempt to incite, abet, promote, and encourage hostility and opposition to the government of the state of Iowa and of the United States." Appellant Mae Plagmann was also indicted on the same charge. After Plagmann was indicted, and on August 3, 1918, he and his wife, Mae Plagmann, entered into a contract with Thomas J. Bray, appellee, an attorney, as follows:

"That the parties of the first part have employed the party

of the second part to act as their attorney in conducting their defense to indictments which have been returned against them by the grand jury of Keokuk County, Iowa, charging them with the crime of sedition, and also to represent them as their attorney in all civil litigation connected with said indictments or which may be instituted by reason thereof, and as compensation for the services which are to be performed by the second party, the first parties agree to pay him the sum of $5,000 as follows: $500 upon the execution of this agreement, and the balance when said cases have been tried or otherwise disposed of.

"It is agreed that the compensation herein provided for shall cover all services to be rendered by the second party in all of the courts of this state, and in preparing the cases for trial. It is also agreed, that said compensation shall cover all necessary legal services to be rendered by the party of the second part in any litigation with one Leon Henderson in prosecuting any slander or libel actions growing out of the criminal charges which have been preferred against the parties of the first part, which the parties of the first part may desire to have instituted and prosecuted."

In February, 1919, the case against Emil Plagmann was tried to a jury. Appellee was attorney for Emil Plagmann and tried the case for him. The trial lasted about two days. A great many witnesses were called. The case was submitted to the jury and a verdict of "not guilty" returned. The case against Mae Plagmann was afterwards dismissed on motion of the county attorney. Mr. Bray acted as attorney for the Plagmanns in both cases.

On September 18, 1919, appellants began this action at law against appellee to recover damages in the specific amount of $5,000, which appellee had received from them as his attorney fee under the contract above set forth. Plaintiffs alleged in their petition, and offered testimony in support thereof, in substance: That Thomas J. Bray solicited appellants to employ him as attorney, representing to them that he was a lawyer of great ability and renown, and a great criminal lawyer, and was the only lawyer in the vicinity qualified and competent to defend

them; that appellants were ignorant of the statutes relating to the charge against them and the penalty, and that appellee represented that the offense charged in each indictment was a felony, and that it meant, if convicted, a term in the state penitentiary; that it was treason against the state of Iowa and the government of the United States, and that, if they were convicted, they would not only be punished by imprisonment in the penitentiary, but their property would be confiscated, and that the Federal government also would have a case against them, with like penalties and forfeitures; that they were Germans and that everybody said they were guilty; that the fee which he was charging them was a very reasonable fee, and a lower fee than would generally be charged by lawyers of the Oskaloosa bar; that appellants believed the statements made by appellee, and relying on the statements so made, entered into the contract.

Appellants further allege in the petition that the statements made by appellee were false, fraudulent, and untrue; that said statements and representations were made by defendant for the purpose of cheating and defrauding appellants out of the $5,000 mentioned in the contract; that appellee knew, at the time of the making of said statements, that they were false; that he made such statements for the purpose of defrauding and cheating these defendants out of their money, and for the purpose of obtaining said $5,000; that Emil Plagmann was a hopeless cripple, and had no chance to know whether or not the statements made were true or false, but he believed them to be true, and both appellants believed the statements and relied on such statements and representations, and that was the reason they signed the contract of employment with appellee; that appellee well knew that the criminal charges against appellants were untrue, and that, if convicted of said charges, they would not be subject to the punishment and penalties represented by appellee; that Emil Plagmann was acquitted by a jury and the charge against Mae Plagmann was dismissed without trial; that the fee charged was an unconscionable fee, and defendant well knew that said fee was unreasonable; that, in view of said indictment against them and the services he performed, it was an outrageous, unreasonable, and unconscionable fee to be charged; and that the

statements and representations made by appellee to obtain said $5,000 fee were made at the time with the intention to cheat and defraud these plaintiffs out of their money.

The petition further alleged that appellee, knowing that plaintiffs would have money coming to them that would be paid through the Farmers National Bank of Oskaloosa, Iowa, on March 1, 1919, by false statements and representations induced plaintiffs to execute and deliver to him a written order upon said bank for $4,500, and upon presentation of said order, received the $4,500. In the petition it was alleged that "defendant did not earn the $5,000 as a lawyer fee, or any part thereof." The demand was for $5,000, with 8 per cent interest from the time it was received by appellee.

Defendant offered no testimony.

At the close of plaintiffs' testimony, the court, on motion of defendant, directed a verdict in favor of defendant. The grounds of the motion were:

"(1)   That the plaintiffs have wholly failed to make a case which may be submitted to the jury.

"(2)   There is no sufficient evidence on which the court can submit the case to the jury.

"(3)   That plaintiffs wholly failed to establish the allegations of their petition.

"(4)   There is no evidence upon which a verdict of the jury could stand.

"(5)   If a verdict should be returned by the jury for the plaintiffs, there is no evidence which would sustain that verdict. And it would be the duty of the court to set aside such verdict upon proper motion being made."

Although there are five grounds in the motion, the substance of all of them is that the evidence is insufficient to support a verdict for the plaintiffs, and is, in effect, a demurrer to the evidence.

Appellee's argument in support of the trial court's ruling sustaining his motion is principally that it was a tort action for damages, and that appellants have failed entirely to prove any damages, and in fact did not attempt to prove any damages, and that, therefore, admitting, as the motion did, that the

representations were made as claimed by appellants, the case could not be submitted to the jury for that reason. Appellants' position seems to be that, when they have established that the representations were made substantially as alleged in their petition, and that such representations were false, and known by appellee to be false when made, and that appellants were induced to enter into the contract employing appellee as their attorney by reason of the representations so made, they have made out a case entitling recovery in the full amount of the fees provided in the contract, which they had paid appellee, with 8 per cent interest thereon from the time of such payment, without offering testimony to prove damages in any amount, by showing either that appellee did not perform services of any value whatever, or that the services he did perform were of no value, or that the $5,000 paid appellee was in excess of a reasonable attorney fee for the services performed. As we understand counsel for appellants, their position is that, if appellee, by his fraud, induced appellants to enter into the contract employing him as an attorney with a consideration of a $5,000 fee, appellants would be entitled to recover from appellee the full amount they paid him under the contract, regardless of what actual services appellee performed in pursuance of the contract. Appellants' position is not tenable. The action is a tort action—an action for damages. The evidence wholly fails to show loss or damages sustained by appellants in any amount. No attempt is made in the evidence to prove damages. On the other hand, appellants, as witnesses in their own behalf, relate that they were both indicted, charged with sedition; that the case against Emil Plagmann came on for trial, a jury was impaneled, about two days consumed in the trial, the case submitted to the jury, and the jury returned a verdict of not guilty; that appellee tried the case for the defendant; and that afterwards the county attorney dismissed the case against Mae Plagmann. The testimony shows that some other services were performed under the contract.

The case is not a summary proceeding under Code Section 3826, under which an attorney may be summarily directed to turn over to his client money in his possession belonging to his client, under a sufficient showing that he has funds in his pos-

session belonging to his client. Neither is this an action in equity to have decreed void, on account of fraud, the contract involved, and to have the fees paid appellee by appellants adjudged excessive, beyond a reasonable fee for the services performed, in a certain amount. By their own testimony, appellants have shown that appellee performed services entitling him to a reasonable fee in some amount, regardless of any contract.

Counsel for appellants argue that appellee is not entitled to receive any fee whatever, and that appellants are entitled to recover the full amount of the contract price, the fee they paid him under the contract, because appellee was guilty of fraud which induced appellants to enter into the contract with him. We think appellants' position is not sound. In support of their position, counsel for appellants cite many cases holding, in substance, that, where an attorney, after his employment and during his service for his client, comes into possession or knowledge of his client's business and situation, and takes advantage of it for his own personal gain, to the disadvantage of his client, he may not be allowed attorney fees. Such a case is *Harding v. Helmer*, 193 Ill. 109 (61 N. E. 838), cited by appellants, where the Illinois court held that, where an attorney for a corporation received its bonds in payment for services as counsel in defending it against certain claims, and by agreement fraudulently consented to the allowance of such claims against the corporation, on condition that he should share in the amount received by the holders thereof, he thereby forfeited his rights as a holder of the bonds, and was not entitled to set off his claim for services against the claim of the corporation's receiver against him for his share of the proceeds of such fraud.

Other cases cited by counsel for appellants hold, in substance and effect, that an attorney who acts in bad faith, and seeks to secure personal advantage to the prejudice of his client, may properly be denied any compensation for his services. The instant case is entirely different from such cases. Counsel for appellants place much reliance upon *Donaldson v. Eaton & Estes*, 136 Iowa 650. It is not in point. The *Donaldson* case was begun under Code Section 3826, authorizing summary proceedings for the recovery of money due clients from attorneys,

plaintiffs in execution against sheriffs, etc.,—that is, moneys collected by these officers and not turned over to the clients. In that case defendants made a contract with plaintiff whereby the plaintiff agreed to and did pay them a certain sum, $4,000, and also agreed to convey to the attorneys certain real estate, in consideration of the attorneys' securing for Donaldson a divorce from his wife and a settling of alimony. By the terms of the contract, the attorneys, out of the money they received, were to pay all costs of the suit and all expenses connected with the divorce proceeding, and their own attorney fee. The motion stated that the money and property received by the attorneys was $2,000 in excess of a reasonable fee for the services performed. We held that such contract was against public policy, and that the trial court should have sustained plaintiff's motion, and required the return by the defendants to the plaintiff of the $2,000 asked to be refunded.

In *Kisling v. Shaw*, 33 Cal. 425 (91 Am. Dec. 644), an action to set aside deeds made by a client to his attorney, the court held that such contracts between attorney and client are not voidable for fraud alone, like those between a trustee and a *cestui que trust*, but that it must be shown in addition that injury resulted to the client from the fraud. In that case the court said:

"The general principle governing this class of cases and forming the basis of the rule is, that if a confidence is reposed, and that confidence is abused, and the other party thereby suffers an injury, the court will grant relief. An essential element of the rule is, that the attorney * * * 'bargains in a matter of advantage to himself,' or, what amounts to the same thing, that the client has suffered injury through the abuse of confidence by the attorney. This fact must be both alleged and proven. It is not enough to show that the relation of attorney and client existed, and that during the existence of the relation the parties entered into a contract, the client being induced thereto by the abuse of confidence by the attorney. If this were so, it would follow either that the contracts of an attorney and client are voidable, like those between a trustee and a *cestui que trust*, which is not true (1 Story's Equity Jurisprudence, Sec-

tion 311) ; or that a party is entitled to relief on the ground of fraud, without showing that damage resulted from the fraud— which is contrary to the undoubted principles of law.'"

Counsel for appellants say that, if appellee wished to avail himself of the *quantum meruit* measure of attorney fees, he should have so pleaded, and offered evidence thereon. We think such position is not tenable. As before stated, appellants have shown services rendered by 'appellee, and it was their duty, if *quantum meruit* should have any place in the case, to have pleaded that the services rendered were reasonably worth a certain amount, and only that much, and that the $5,000 paid by appellants to appellee was, beyond the amount of such reasonable fee, fraudulent and excessive. The case presented by appellants fell short, at least, of showing damages in any amount to have been sustained by appellants, which was a necessary element to be shown in this action, based on fraudulent representation. The court could do nothing else, and did not err in sustaining defendant's motion for a directed verdict.

Opportunity is not afforded us by the record in this case to pass upon and determine the reasonableness or unreasonableness of the attorney fee involved, and we must refrain from discussing that question. We do not approve nor disapprove the fee of appellee charged and received. We limit our decision to the question of law as herein set forth.

The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.