THE CITY DEPOSIT BANK OF COLUMBUS, OHIO, Appellant,
v. SAMUEL T. GREEN and H. S. WILLIAMS, defendants,
and JOHN THOMPSON, N. J. WILKINS, R. J. HIBBS,
J. E. COREY, J. O. DOUGHTERTY, JAY GREEN, T. B.
COLLICOTT, W. E. MOULDS, C. H. GREEN, JOHN RAS-
MESS and BURNS GREEN, Appellees.

**Negotiable instruments:** FAILURE OF CONSIDERATION: JOINT MAKERS.
1 Partial failure of consideration may be pleaded as a defense to
a note in the hands of a purchaser with notice or who does not
pay value; and a partial failure of consideration may consist of
the fraud in substituting an insolvent maker for one who is sol-
vent, each maker signing in reliance upon the responsibility of the
others.

**Same:** BONA FIDE HOLDER: BURDEN OF PROOF. Where a note in its
2 inception was tainted with fraud, even though as to the consid-
eration, a transferee has the burden of showing that he is a
holder for value.

**Fraud:** INTENTIONAL FALSE PROMISE. A mere false promise to do a
3 thing in the future is not a fraud; but where the promise in-
duces another to act to his damage and there was at the time a
secret intention of not performing the promise, the transaction is
an actionable fraud: as where one procures the signatures of re-
sponsible parties to a note on the representation and promise
that certain other responsible parties will also sign the instru-
ment, not however intending to procure their signatures but those
of different and insolvent parties.

**Fraud:** RATIFICATION. Where defendants contracted to purchase cer-
4 tain shares in property and executed a joint note therefor on the
representation of the seller that certain other responsible parties
would also sign the note, but others who were insolvent were
intentionally substituted in their stead, a retention of the prop-
erty by defendants after the discovery of the fraud was not a
ratification of the transaction.

**Evidence:** WITHDRAWN PLEADINGS. When one division of a pleading
5 has been withdrawn it is no longer a part of the pleadings, and
can only be made available as admissions of the party by formally
introducing it in evidence; and the weight to be given it is to be
determined by the jury.

**Fraud:** MATERIAL FALSE STATEMENTS. The statements made to procure the signatures of parties to a note that no shares in the property to be purchased therewith would be sold to irresponsible parties, that all shares had been subscribed for and that certain responsible persons would sign the note, were material and pertained directly to the subject matter of the undertaking.

**Instructions:** INACCURATE STATEMENTS. Although expressions in an instruction may not be strictly accurate in view of the issues, still if not misleading they will not be held prejudicial.

**Interrogatories:** AMENDMENT. Answers to interrogatories attached to a pleading may be amended to correct mere mistake or oversight when promptly done, but not during the progress of the trial to meet the varying phases of the case as developed; and the court's discretion in denying an amendment will not be interfered with on appeal, except upon a clear showing of error in so doing.

*Appeal from Calhoun District Court.*— HON. F. M. POWERS, Judge.

THURSDAY, APRIL 9, 1908.

ACTION on promissory note resulted in judgment for part of it only. Plaintiff appeals.—*Affirmed.*

*J. B. McCrary* and *E. A. & W. H. Morling,* for appellant.

*Hutchinson & Jacobs,* for appellees.

LADD, C. J.— Three notes of $1,000 each were executed to McLaughlin Bros. by the thirteen defendants as the price of a shire stallion. The payee transferred the note first maturing to the plaintiff. Upon its presentment payment was refused, and this action thereon was begun September 24, 1903. Default and judgment for the full amount claimed was entered against Samuel T. Green and H. S. Williams. The other defendants answered in three counts. The first of these pleaded a general denial, and the second

that each defendant was liable for but one-fifteenth of the note. The above counts were withdrawn, and the last trial had on the third count of the answer in which defendant alleged that McLaughlin Bros., in order to sell said stallion, by their agent Murray circulated a subscription contract substantially like that in *McArthur v. Board,* 119 Iowa, 562, save that there were to be fifteen shares of $200 each; that each of the answering defendants, except Moulds and Jay Green, subscribed for one share, and Moulds and Jay Green for one-half share each; that said Murray orally represented that no persons not financially responsible would be accepted as subscribers for shares in the horse; that these defendants signed the same relying thereon; that three persons, Wingerson, Eakin, and Seay, signed said subscription contract for one share each, and said agent for McLaughlin Bros. released them therefrom and excused them from signing the notes heretofore mentioned, and fraudulently procured stock thus subscribed to be taken by Samuel T. Green and H. S. Williams; that said agent induced said Williams to do so and to sign said notes by paying him the sum of $35, and thereupon assigned to him the three shares of stock of $200 each in addition to the one he had subscribed for and delivered said Green one share; that said Williams and Green were then and have since then been insolvent; that at the time said defendants signed such notes they had no knowledge of said substitution of said Green and Williams, and would not have signed the same had they known thereof; that in doing as above stated McLaughlin Bros. knew of the insolvency of Green and Williams, and acted therein for the purpose of perpetrating a fraud on these defendants and compelling them to pay for the shares in the stallion so fraudulently disposed of to said persons; that in order to carry out their design said McLaughlin Bros. pretended to dispose of the notes to plaintiff, but this was not in good faith nor for a valuable consideration before maturity, but for the purpose of effectuating their fraudulent enterprise. By reason of

the foregoing facts the defendants alleged that the note was held by plaintiff subject to the equities set up, and a part of said consideration of said note had failed, and that by reason of the fraud alleged the plaintiff was not entitled to recover of these defendants.

On a former appeal this court held that the circumstances of the transfer of the note in suit were such that the jury might have found plaintiff not to have been a *bona fide* holder for value. *City Deposit Bank v. Green,* 130 Iowa, 384. The present contention that this issue was not raised by the answer is disposed of by the above statement of the issues. The main question now presented is whether the matters pleaded can be raised as defense, or should they be set up by way of counterclaim. If the fraud inhered in the notes in such a manner that by reason thereof defendants received less of value than they would have but for such fraud, then there was a partial failure of consideration and the authorities are agreed that part failure of consideration may be set up as a defense to a promissory note in the hands of a payee or holder with notice or not for value. *Russ L. & M. Co. v. Muscupaïbe L. & W. Co.,* 120 Cal. 521 (52 Pac. 995, 65 Am. St. Rep. 186); *Hammatt v. Emerson,* 27 Me. 308 (46 Am. Dec. 598); *Torinus v. Buckham,* 29 Minn. 128 (12 N. W. 348); 9 Cyc. 370; section 3070, Code 1897; Randolph on Com. Paper, section 539 *et seq.* But each of these defendants got the interest in the horse precisely as he bargained, and for which he had subscribed and signed the note. The effect of the fraud practiced was not to lessen the consideration paid, but to increase the liability of each therefor. All of them knew that both Williams and Green had subscribed for one share each, so that no complaint as to these can be entertained. But in excusing the three responsible persons from taking their shares and signing and issuing these shares to Williams, an insolvent, instead, an additional liability of $600 was saddled upon them. Had all signed the notes

1. NEGOTIABLE INSTRUMENTS: failure of consideration: joint makers.

as originally proposed, recovery for the full amount could have been had against any one of the individual signers. No more is now demanded. How, then, can it be said that there has been any failure of consideration? Should any one of defendants pay the notes, contribution might be enforced against the others. This could have been done against the three responsible subscribers had they also signed the notes, but cannot be made effective as against Williams, as he was and is insolvent. The failure of consideration, then, was in the loss of the assistance of the three responsible subscribers through the fraudulent substitution of Williams therefor as a signer of the notes, and in event of payment of the same the right to resort for contribution against responsible persons. In other words, the difference between a solvent and an insolvent signer of a note is a valuable consideration to another who signs, relying on the financial responsibility of those who join as makers. The answer alleged that defendants acted on the representations that all the subscribers would be responsible, and that Wingerson, Eakin, and Seay, who were responsible, had subscribed for stock and would sign the note, and that Williams was fraudulently substituted in their stead, depriving them of the benefit of their assistance in payment of the notes, or, in event of payment thereof by defendants, the benefit to be derived from contribution. Manifestly this affected the consideration to the amount of the *pro vata* share which the three persons would have paid.

II. If the notes were tainted with fraud in their inception, even though this affected the consideration, the burden of proof was upon the plaintiff to show that it was a

2. SAME:
*bona fide*
holder:
burden of
proof.

holder for value. *Keegan v. Rock,* 128 Iowa, 39. And the evidence was such that the issue as to whether plaintiff took the note with notice of its infirmity was for the jury. *Bennett State Bank v. Schloesser,* 101 Iowa, 571. Moreover the evidence as to whether value was paid for the note or merely a credit en-

tered on the books of the bank was, like that on the former trial, and therefore properly submitted to the jury, and its finding that plaintiff did not pay value conclusive.  *City Deposit Bank v. Green,* 130 Iowa, 384.   See *McKnight v. Parsons,* 136 Iowa, 390.   The instruction submitting this last issue was accurate, but not as full as it might have been; but, in the absence of the request of a more comprehensive statement of the law, appellant is not in a situation to complain.

III.   The evidence that the agent of the McLaughlin Bros. represented that the fifteen shares in the stallion would be sold to none but responsible persons was uncontradicted, and that defendants signed both the subscription paper and the notes, relying upon this representation, and with the understanding that such subscribers would sign the notes must have been found by the jury.   The fair inference from the record is that the agent in making these representations did not entertain the purpose of disposing of all the shares to responsible parties, and that, when he falsely represented that all the subscribers would sign the notes, he knew this was not true, and secretly intended to procure a " strawman " to sign instead of Wingerson, Eakin and Seay, and thereby defraud defendants of the amount these parties would have paid.   We agree with appellant that, if this was no more than a false promise to do something in the future, it would not amount to a fraud.   But it was something more.   It was a device to procure defendants' signatures to these notes with the knowledge that, but for the false representation of his intention and that of the three persons named, the defendants would not sign them, and with the secret intention not to procure their signatures.   The existence of an intention unconnected with an act is not actionable.   *Starr v. Stevenson,* 91 Iowa, 684; *Theusen v. Bryan,* 113 Iowa, 496.   But an intention is a fact, for a witness may be asked what

8. FRAUD:
   intentional
   false promise.

intention he entertained when he did a particular act. *Kruse v. Seiffert,* 108 Iowa, 352.

Moreover this court has held that a sale of goods to a person having no intention to pay therefor may be rescinded and the property sold recovered, owing to the fraud practiced. *Cox Shoe Co. v. Adams,* 105 Iowa, 402. If this be so, then it necessarily follows that an action for deceit will lie. As in such cases liability for the purchase price exists, actions on account of deceit, as might be expected, have been rare. It is said in Bigelow on Fraud, 484, that "to profess the intent to do or not to do when the person intends the contrary is as clear a case of misrepresentation and of fraud as could be made." In *Goodwin v. Horne,* 60 N. H. 486, the court says that: "Ordinarily false promises are not fraudulent, nor evidence of fraud, and only false representation of past or existing facts are actionable, or can be made the ground of defense; . . . but when the promise is made with no intention of performance, and, for the very purpose of accomplishing a fraud, it is the most apt and effective means to that end, and the victim has a remedy by action and defense. Such are cases of concealed insolvency and the purchase of goods with no intention to pay for them." In *Swift v. Rounds,* 19 R. I. 527 (35 Atl. 45, 61 Am. St. Rep. 791, 33 L. R. A. 561), the Supreme Court of Rhode Island, speaking through Tillinghast, J., after an exhaustive review of the decisions, lays down the law as follows: "Defendant's counsel contends that the alleged representation was not as to any fact present or past, but merely as to what the defendant would do in the future with reference to paying for the goods, and that to say what one intends to do is identical to saying what one will do in the future, which amounts simply to a promise, and, furthermore, that a representation of what will happen in the future, even if not realized, is not such a representation as will support this action. We do not assent to this method of reasoning. The state of man's

mind at a given time is as much a fact as is the state of his digestion.   Intention is a fact.   *Clift v. White,* 12 N. Y. 519.   Hence a witness may be asked with what intent he did a given act.   *Seymour v. Wilson,* 14 N. Y. 567.

A man who buys and obtains possession of goods on credit, intending not to pay for them, is then and there guilty of fraud.   The wrong is fully completed and no longer exists in intention merely, and a cause of action instantly accrues thereon in favor of the vendor to recover for the wrong and injury sustained.   It is true the purchaser may afterward repent of the wrong and pay for the goods, and the vendor may never know of the wrongful intent.   But this does not alter the case at all as to the original wrong and the liability incurred thereby.   Of course a mere intention to commit a crime or to do a wrong is no offense.   But, when the intention is coupled with the doing or accomplishment of the act intended, that moment the wrong is perpetrated and the corresponding liability incurred."   In that case the court held that an action for deceit for the false representation of an intention to pay for goods sold on credit would lie, and the principle finds approval in *Shrafft v. Fidelity Trust Co.,* 73 N. J. Law, 57 (62 Atl. 933).   See, also, *Eddington v. Fitz Maurice,* 29 Ch. Div. 459; *Cockrill v. Hall,* 65 Cal. 326 (4 Pac. 33); *Rogers v. Virginia-Carolina Chemical Co.,* 149 Fed. 1 (78 C. C. A. 615); *Sweet v. Kimball,* 166 Mass. 332 (44 N. E. 243, 55 Am. Rep. 406).   In the case at bar the agent had caused the three persons to sign a subscription paper which was well calculated to deceive the defendants into the belief that they were to participate in the purchase and would sign notes; so that, when the agent represented that they would so sign, the defendants quite readily acted in reliance thereon. But according to the evidence the agent then knew this was not true, and had no intention of procuring their signatures. This was not only a false representation of his own intention, but a concealment of the existing purpose of the three sub-

scribers not to sign as well, and amounted to an actionable fraud.

IV.  Appellant contends that in retaining the stallion after having discovered the fraud the defendants ratified the transaction.  They kept no more than they contracted for, that is, ten of the fifteen shares in the animal, and as plaintiff's assignor could not assert its fraud against Williams, the signers of the notes were entitled to the horse, regardless of whether the particular fraud had been perpetrated.  The fraud practiced is not now claimed to have tainted the sale of the several shares.  What defendants are insisting upon is that plaintiff's assignor rather than themselves shall bear the burden of the loss resulting from the substitution of Williams as the taker of shares for the three responsible subscribers, not that the sale be rescinded.  No tender of the return of the horse, then, was necessary.  Plaintiff now has a judgment on this note against Williams, whom its assignor chose to accept on the notes instead of responsible persons; and, if this change was made with the fraudulent design to compel defendants to pay for the shares issued to him, relegating plaintiff, if not an innocent purchaser, to such judgment for *pro rata* compensation, is precisely the relief justice demands.

4. FRAUD: ratification.

V.  The second count of the answer which had been withdrawn was not introduced in evidence by plaintiff. In it defendants set up a liability in severalty on the note of $73.67 each, except Moulds and Jay Green, who were said to be liable for $36.84 each, or a total of $736.70.  This theory of the case was held to be untenable on the former appeal.  The count was no part of the pleadings, and was available only as evidence of declarations of defendant when formally introduced as such. *Marshall Field Co. v. Ruffcorn Co.,* 117 Iowa, 157.  The statements contained therein pertained to the particular defense, and was not necessarily inconsistent with that in-

5. EVIDENCE: withdrawn pleadings.

terposed in the third count. The weight to be given such declarations, depending largely, as it did, on the circumstances of making them, was for the determination of the jury.

VI.    It is urged that the fraud alleged was merely incidental, as in *Altman v. Anton,* 91 Iowa, 612, and *Noel v. Horton,* 50 Iowa, 687. But this is not so. The statement that no shares would be sold save to responsible parties, that all had been subscribed for, and that Wingerson, Eakin and Seay would sign the notes with the others, were matters of material inducement pertaining directly to the subject-matter of the undertaking.

6. FRAUD: material false statements.

VII.    In the ninth instruction the court charged that as a condition to the allowance of the defense the defendants must have been damaged, and in the tenth instruction that in event of ratification the defendants would be " precluded from asserting any claim for damages." These expressions, in view of the issues, were not quite accurate, but in the connection employed could not have been misleading to the jury.

7. INSTRUCTIONS: inaccurate statements.

VIII.    This action was begun September 24, 1903, and the answer was filed October 6th of the same year. To this answer thirty-nine interrogatories were attached, to which answers by plaintiff's cashier were filed two days later. The cause was tried, and, on appeal, remanded for a new trial March 6, 1906. On the 18th day of March, 1907, the plaintiff filed additional answers to the interrogations, making them more specific, signed by other officers of the bank as well as cashier. On motion these were stricken from the files. There is authority for saying that permitting amendments to answers to such interrogations is discretionary with the court. *Pool v. Harrison,* 18 Ala. 514; *Baltzer v. R. Co.,* 89 Wis. 257 (60 N. W. 716). Such amendments, if allowed, however, should be limited to the correction of mere mistakes or

8. INTERROGA-TORIES: amendment.

oversights, and be made promptly upon discovery of defects so as to obviate any inference that they are the result of an afterthought that more evidence is essential. Answers to interrogatories attached to the pleadings "may be read by either party as a deposition between the party interrogating and the party answering" (section 3604, Code 1897), and it manifestly would be unfair to permit the party answering to add to his answers at different times, as the trial progresses, to meet the varying phases of the case as these develop. Especially is this true where, as in this State, the party is not confined to responding merely to the interrogatories, but "may state any new matter concerning the same cause of action, which shall likewise be read as a deposition." Section 3605, Code 1897; *Beem v. Farrell*, 135 Iowa, 670. If other evidence is essential, the way to procure it is open by having the answering party testify as a witness, or taking his deposition in the ordinary way. Rarely will there be occasion for permitting any amendments to such answers, and only, if ever, upon clear showing of abuse of discretion will this court interfere with the refusal of permission by the trial court. There was no error in striking the additional answers from the files.

Several other matters are argued, such as that the issue was disposed of on the former appeal, that the question of ratification was not properly submitted, that the defense was not pleaded as a joint defense and the like, all without merit and not calling for separate consideration.

The record is without prejudicial error, and the judgment is *affirmed*.