ELMER GIPP, Appellant, v. A. C. LYNCH, Appellee.

No. 44597.

 █ 

H. J. Hoffmann, of Kenline, Roedell & Hoffmann, Max Putnam of Putnam, Putnam, Fillmore & Putnam, and Gordon Elliott, for appellant.

C. J. Lynch and Donnelly, Lynch, Anderson & Lynch, for appellee.

Miller, J.—Appellant's petition is in two counts. In count I, as amended, appellant alleged that he was involved in an automobile accident, which he reported to his insurance company; that the appellee was engaged as local counsel to represent him in respect to a civil action, threatened as a result of the accident and defended by the insurance company; that, as such attorney, appellee conferred with appellant in reference to the civil action; that appellant was arrested for failing to stop at the scene of the accident; that the insurance company authorized appellee to represent appellant in the criminal proceedings at the expense of the insurance company; that appellee fraudulently concealed such authorization of the insurance company, induced appellant to pay him a retainer fee of $100 to represent appellant in the criminal proceedings, and stated on inquiry by appellant that the insurance company was not interested in the defense of the criminal case; that appellant relied upon appellee's representations and would not have paid $100 had he known that the insurance company had engaged appellee, and had agreed to pay his fees in the criminal case. Appellant prayed for judgment for $300 as treble damages, alleged to be due pursuant to the provisions of section 10921 of the Code. In count II of appellant's petition, he incorporated the allegations of count I therein and prayed for judgment for $100, alleging that appellee was unjustly enriched to that extent.

Appellee's answer consisted first of a general denial of all allegations of the petition not specifically admitted, modified or otherwise answered. Appellee admitted the occurrence of

the accident and the employment of him by the insurance company in the civil case, and his activity in such matter. He also admitted appellant's arrest and a conversation with Des Moines counsel for the insurance company regarding representation of appellant in the criminal proceeding, such allegations of the answer being as follows:

"That this defendant admits that on August 5, 1937, Max Putnam, of the firm of Putnam, Putnam, Fillmore & Putnam, the Des Moines counsel for said insurance company, talked to the defendant over the long distance telephone, and at that time said to defendant that he desired defendant to enter an appearance for the plaintiff in said criminal proceeding, and to take charge of said case on behalf of the plaintiff and said insurance company.

"That this defendant thereupon stated to the said Max Putnam in said conversation over the telephone that he would not enter any appearance for the plaintiff, or in any way act for the plaintiff, in said criminal proceedings unless and until he was retained and employed by the plaintiff himself so to do and that he regarded the said criminal proceeding as one in which the plaintiff herein should be represented by counsel of his own selection, and that he would so advise the plaintiff herein, and that only in event the plaintiff herein retained and employed this defendant to appear and act for him in the criminal proceeding would this defendant appear therein."

Appellee further alleged that appellant called at his office and was advised of the conversation with Max Putnam and was advised that appellee was willing to act as appellant's attorney in the criminal proceeding only if appellant saw fit to retain him. The circumstances of the employment are further set forth in the answer, the substance of which was to the effect that appellant did employ appellee and pay him a retainer fee of $100 and that appellant was advised that appellee did not care to take the criminal case under the arrangement suggested by Max Putnam, and that Max Putnam was so advised by appellee. The answer also contained a counterclaim for $50 claimed to be due in addition to the $100 paid by appellant.

Appellant's reply denied the allegations of the answer and counterclaim that were inconsistent with the appellant's peti-

tion, and also contained allegations regarding the good faith of the action.

The case was tried to the court and a jury. At the close of appellant's evidence, the trial court sustained appellee's motion for directed verdict. Appellee's counterclaim was withdrawn, judgment was entered dismissing the case at appellant's costs, and appeal has been perfected therefrom to this court.

■ Since the court directed a verdict in favor of appellee, the evidence of course must be considered in its most favorable light in favor of appellant. However, since the motion was sustained at the close of appellant's evidence in chief, there is little, if any, conflict in the evidence. Also, even considering the evidence in its most favorable light for appellant, a majority of this court is of the opinion that the evidence was insufficient to sustain a verdict in favor of appellant, and that the trial court committed no error in sustaining appellee's motion.

The evidence shows that an automobile accident occurred on August 1, 1937, which accident was reported by appellant to Gus Heuser, the agent of the insurance company which carried an automobile liability insurance policy on appellant's car. Appellant received a call from appellee, who stated that he represented the insurance company. The circumstances of the accident were discussed with appellee. Thereafter, Heuser advised appellant that criminal proceedings had been commenced against him, and that he had better get a lawyer. Appellant went to appellee's office with Heuser and with one Myrtle Sersland, who was a passenger in the car at the time of the accident. They discussed with appellee the matter of his representing appellant in the criminal case. Appellee asked Heuser if the insurance company had the right to protect appellant on the criminal charge. If Heuser answered this question, counsel neglected to show the answer in the record. The witnesses agree that appellee did not advise appellant of the substance of his conversation with Max Putnam. Appellee did advise appellant that the charge against him appeared to be a serious one, that appellant would not have to hire him because he was on the civil case, and that there were other lawyers in town who could handle the case for him. Appellee discussed the matter, studied it and stated that he would have to have $100 down and if the case lasted more than two days in court, he would have to have $50 a day. The parties left appellee's office without coming to

a definite decision. Later appellant and Miss Sersland returned to appellee's office, at which time appellant retained him as his attorney in the criminal case, and paid him the retainer of $100. Before doing so, appellant asked appellee if the insurance company would not stand for the criminal case as long as they were interested in the civil case, and appellee replied, "No, they are not interested in that criminal case, and why should they pay?"

Appellee was retained by appellant on August 5, 1937. In October 1937, Max Putnam agreed with appellant to furnish counsel for the criminal case and appellee was discharged. Appellee acted as appellant's attorney in the criminal case, appeared for him at the arraignment, and conferred with him numerous times in connection with the matter, and there was no difficulty between appellant and appellee at any time before the date appellee was discharged. The only reason given by appellant for discharging appellee, as his attorney, in the criminal case, was that the company was taking over the defense for him.

Neither appellee nor Max Putnam was called as a witness to recount the conversation which was had between them over the telephone. The only evidence of such conversation appears in the admissions of the answer hereinbefore quoted, and statements in certain letters between Max Putnam and appellee. The conversation took place on August 5, 1937. On the same day appellee wrote Putnam a letter, Exhibit 2, in which the following statement appears:

"You notified me to appear for Mr. Gipp in the criminal matter, but without his express authorization I do not feel that I can inject myself into that phase of the case. If he should return and inform me that he desires my services, I shall then appear."

On August 7, 1937, Putnam wrote appellee a letter acknowledging receipt of the letter of August 5th, and stating:

"First, if you have not already done so, we would like to have you advise Gipp that in corresponding with the company over this matter, they stated that in view of the fact that he had changed his previously dubious attitude, the company was willing to and would take care of your attorney fees in appearing in this criminal matter, and that even if he engages some other

lawyer to represent him, we will have our representative present also under our policy rights to protect our interests whether we should have you as that representative or not. Thus he will know that you are. not trying to force your personal service upon him, and he will also know that we don't feel called upon to get his consent to protecting our interests under this policy.''

On October 9, 1937, appellee submitted to Max Putnam a statement for services rendered and expenses incurred between August 2, and October 7, 1937. In the letter, Exhibit 3, appears the following paragraph:

''When the criminal matter developed I asked you over the phone as to whether or not I was to look to you or to Gipp for payment for my services in the criminal matter to which you replied that I was to look to you. However, I felt the defendant would be in a more suitable frame of mind if he at least contributed in the criminal matter, and I am therefore not looking to you entirely for my fees on that phase of the case. If the reasonable value of services rendered in the criminal matter upon its termination exceed the sum of $100.00, I shall expect to be paid for such excess. Up to $100.00 I shall look to Gipp for payment on the criminal action.''

The insurance company objected to the bill submitted with Exhibit 3, and in reply to their letter, appellee wrote Max Putnam on October 19, 1937, a letter, Exhibit 4, in which he states:

''In addition to the services rendered, I trust that your company has not lost sight of the fact that they authorized my appearance in the criminal cause and agreed to pay the full charges therefor. Upon my own initiative I have taken them almost entirely out of the picture on that matter, the charges for which alone would probably equal the total charge made as per bill rendered.''

In addition to the foregoing statement, appellee offered to withdraw from the civil case, which offer appears to have precipitated the controversy out of which this case arises.

■ This action is based primarily on the claim of fraudulent conduct on the part of appellee. The elements necessary to constitute actionable fraud are stated by this court in the case of Reinertson v. Consolidated Chem. Prod. Co., 205 Iowa 417, 420, 216 N. W. 68, 69, as follows:

"The elements of a cause of action for fraud, though they may be stated in more condensed form (Smith v. Packard & Co., 152 Iowa 1, 5, 130 N. W. 1076), are: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage. 26 Corpus Juris 1062."

In appellant's brief and argument, appellant relies upon a statement in 12 Ruling Case Law, page 239, wherein substantially the same elements are asserted as necessary to sustain an action for fraud or deceit. It is appellant's theory that, under the record introduced herein and above reviewed, appellee's representation to appellant that the insurance company was not interested in the defense of the criminal case and would not pay for the expense thereof was a false statement, was material to the matters being discussed at the time, was known by appellee to be false, was made with intent to deceive appellant, that appellant relied upon the same, and was damaged by reason thereof. It is the claim of appellee that the insurance company was not obligated under its policy to defend the criminal case, that any agreement on its part to pay for such defense would be ultra vires, contrary to public policy, void and unenforceable; that the statement of appellee was not a false statement as a matter of law; that it was on a matter immaterial to the matter being discussed, that it was not made with the intention to deceive or defraud, and that appellant was not damaged by any reliance thereon.

The arguments of counsel on the propositions above reviewed raise rather interesting questions of law. However, it is only necessary for this court to decide one of them. That is the question, whether appellant's proof of damage was sufficient to have sustained a verdict in his favor.

As above pointed out, the record shows that services were rendered by appellee in appellant's behalf at his instance and request, pursuant to the retainer fee paid by appellant in connection with the criminal case. Appellant has offered no evidence whatever of the value of the services rendered by appellee, and seeks to recover from appellee the full amount of the retainer paid.

Ordinarily, where one employs an attorney to represent him and pays him a fee for such services, which fee is sought

to be recovered in its entirety on the theory that its payment was fraudulently induced, the plaintiff must show that the services were of no value; if the record shows that services were performed, and there is no evidence as to the value of such services, the plaintiff fails to establish the amount of his damage, the evidence is fatally deficient, and a motion for directed verdict is well grounded. Plagmann v. Bray, 193 Iowa 917, 188 N. W. 150.

Appellant seeks to avoid the rule announced by this court in the case of Plagmann v. Bray, supra, by contending that, since the insurance company was obligated to pay appellee's fee in the criminal case, there was no obligation on the part of appellant to pay any part of it and, therefore, the entire fee should be recovered.

Before the insurance company could be bound to pay appellee's attorney fee in the criminal case, it was necessary that someone, who was authorized to bind the company, undertook to impose such an obligation upon it. In appellant's petition, he alleged that the obligation was imposed upon the company by Max Putnam on August 5, 1937, who talked with appellee on long distance telephone and "with the express authorization of said company" authorized appellee to appear for appellant in the criminal action and afford him counsel therein at the expense of the insurance company. That allegation was not admitted in the answer and was therefore denied by the answer. Appellant introduced no evidence whatever to sustain the allegation that Max Putnam had the express authorization of the insurance company to impose such an obligation upon the company.

The pleadings admit that the insurance company was obligated to defend the civil case. Appellant was unable to produce the original insurance policy, but offered in evidence a copy of the same. This copy of the policy was objected to by appellee on the grounds that the policy imposed no obligation upon the insurance company to provide defense of the criminal case. The objection was sustained. No error is assigned as to this ruling, and the correctness of the ruling was substantially conceded by Mr. Hoffmann, one of appellant's attorneys, when, in response to a question by the trial court regarding any provision of the policy imposing an obligation upon the company to defend the criminal case, he stated:

"We are very frank with the court to say that it is not our contention that there is any provision of that kind in the policy. This was an undertaking willingly assumed by the company, accepted by the defendant, and that the defendant has billed the company for those services."

 On the issue of acceptance of the offer by the appellee, we are also of the opinion that the evidence is wholly insufficient. The only evidence on the question of acceptance of the alleged offer, in addition to the admissions in the answer above quoted, are the provisions of the correspondence between appellee and Max Putnam hereinbefore quoted. We hold that these are not sufficient to constitute evidence of a binding obligation on the part of the insurance company.

As above pointed out, in the answer, appellee alleged that he would appear for appellant in the criminal case only if retained and employed by appellant. In the letter, Exhibit 2, appellee stated that he would not appear in the criminal case without express authorization from appellant. In Max Putnam's letter of August 7, Exhibit 5, he instructed appellee to advise appellant that the company was willing to take care of appellee's attorney fees in the criminal case. This letter was admissible to show an offer, but it was wholly insufficient to constitute substantive evidence that it was authorized by the company or that it was accepted by appellee. In appellee's letter of October 9, 1937, Exhibit 3, he expressly stated that the company is not obligated to pay his attorney fees in the criminal case unless they exceed the sum of $100, and that, up to that amount, appellee was looking to appellant for the payment of his fees. Substantially the same statement appears in the letter of October 19, 1937, Exhibit 4.

 In appellant's argument before this court, he seeks to establish the obligation of the insurance company to pay appellee's fee by estoppel. Numerous cases are cited in support of the proposition that one who professes to act as an agent for another in a particular transaction is estopped to deny that the agency existed. The rule of these cases is well established, but it has no application to the facts presented by the record herein. When appellee secured the retainer of $100 from appellant, he did not profess to secure said sum as agent of the insurance company. According to appellant's testimony, appellee asserted

1030

that the insurance company was not interested in the criminal case, and would not pay the attorney fee for the defense of such case. There is no basis for the application of the rule of estoppel contended for by appellant.

The fact that appellant's evidence was insufficient to show that the insurance company authorized Max Putnam to guarantee appellee's fee in the criminal case or to establish that appellee accepted the proposition suggested by Putnam, and that appellant now relies upon estoppel to supply the defects in the evidence, tends to further emphasize the importance of the fact that the evidence fails to show or indicate any disposition upon the part of the insurance company to reimburse appellant for the $100 paid by him to appellee. If the insurance company was in fact obligated to save appellant harmless from expense in the defense of the criminal case, a disposition on its part to reimburse him for the retainer he paid to appellee, pursuant to which services were rendered by appellee, would have been persuasive evidence of such an obligation.

■ Accordingly, a majority of this court is of the opinion that the evidence was wholly insufficient to establish a binding obligation upon the part of the insurance company to pay appellee's fee in the criminal case. Appellant has, therefore, failed to avoid the rule applied in the case of Plagmann v. Bray, supra. Having failed to introduce any evidence as to the value of the services rendered by appellee, appellant has failed to establish any measure of damages which would support a recovery, had the case been submitted to the jury.

■ The record herein appears to be one for the application of the rule recognized by this court in the case of Steckel v. Million, 210 Iowa 1139, 1141, 231 N. W. 387, 388, wherein we state:

"Because of the record here presented, we are constrained to affirm the judgment and decree entered in the district court. This conclusion is reached, not, however, on the theory suggested by the district court, that there was fraud without resulting prejudice, but rather, by applying the principle that there can be no actionable fraud in the absence of damage or prejudice. Without prejudice or damage to appellant, there was, in fact, no fraud, although Scott and the appellee may have intended to defraud."

In reference to count II of appellant's petition, the same fatal defect appears in the evidence. In that count, recovery was sought because of alleged unjust enrichment. In the absence of evidence that the insurance company was obligated to pay appellee's fee in the criminal case, the evidence was insufficient to sustain a verdict based on alleged unjust enrichment.

In view of our decision above set forth, it is unnecessary to discuss the other questions raised by the briefs. The decision of the trial court on the motion for directed verdict was right. The judgment entered pursuant thereto must be and it is affirmed.—Affirmed.

MITCHELL, C. J., and OLIVER, STIGER, HAMILTON, and HALE, JJ., concur.