THE K. O. LEE & SON COMPANY, Appellant, v. O. W. SUNDBERG, Appellee.

No. 44979.

April 2, 1940.

Helsell, Burnquist & Bradshaw, for appellant.

Price, Rider & Keefe, for appellee.

Oliver, J.—Appellant, K. O. Lee & Son Co., a corporation, was a manufacturer of binder twine, located at Aberdeen, South Dakota. Appellee, Sundberg, was a dealer in farm supplies. He had been selling twine for appellant, and in July 1936 wrote appellant relative to a sales contract and its sales policy for the ensuing year. Lee replied he had come to the conclusion the company should sell twine at 25 cents per cwt. (12½ cents per bale) under International Harvester Company. Appellee then called upon C. C. Lee at Aberdeen. He testified Lee told him the price for the ensuing year would be 12½ cents per bale below International Harvester Company, or, in other words, below American standard make binder twine; that:

"We have made up our mind to do that this year. * * * We are going to establish that price regardless of what the other concerns do."

Appellee further testified he told Lee he had sold twine for International, and that Lee might be "putting his head in the loop"; that Lee said he would spend a million dollars to put this twine out and carry out his contract; that appellee told Lee if he devoted all his time and gave up other work he wanted to be assured Lee would carry out his program and that appellee was told he could rest assured that was what Lee was going to do. Appellee testified he relied upon these repre-

sentations and was thereby induced to enter into the sales contract.

About August 22, appellee received the written contract signed by K. O. Lee & Son Company by C. C. Lee, which provided appellee was to act as sales agent for appellant to solicit orders from dealers in certain towns and cities of Iowa and Nebraska, at a commission of 15 cents per bale with advanced expense money to be deducted from commissions. The contract contained the following:

"It is understood that all twine is to be sold for cash. Any orders written with a discount allowed or calling for special terms (either time settlement or consignment) must be approved by the Company. Commissions on such sales will not be due and payable to the Sales Agent until settlement in cash is received in full by the Company from the purchaser. The·Company assumes no liability to pay commissions on twine orders unfilled for any reason. * * * This contract may be terminated at any time by either party."

Enclosed with this contract was a letter of transmittal and company bulletins stating:

"Our selling price on * * * twine will be 25¢ per cwt. below the International Harvester Company price. * * * After the Harvester Company prices have been announced next winter or spring, the price per bale, of course, can be inserted, this price being 12½¢ less than International Standard."

Also: "Subject: Revised policy for 1937. Gentlemen: (Sundberg) We have worked out a new sales program for this coming season which will be outlined herein * * *. The price of these twines will be 25¢ per 100 weight under I. H. C. * * * This is going to increase your business materially and possibly double it."

The bulletins instructed salesmen to tell dealers "the price will be 25¢ per cwt. under" standard twine and that, if necessary, this statement could be inserted in orders. There was also enclosed a sample order blank in which was printed a statement that the price would be "12½¢ per bale below the 1937 regular American prices for standard twine." The customer was permitted to reduce his order in case of crop failure.

Appellee then executed and returned the contract and pro-

ceeded to work thereunder. Orders were taken for delivery during the 1937 crop year and no price was inserted but it was agreed to be 12½ cents per bale below regular American prices. On December 23, 1936, appellee received a bulletin advising him that thereafter the company wanted no orders written with the notation that the price would be 12½ cents per bale under American prices:

"You can tell the customers that our price will be 12½¢ per bale under American prices for Standard twine, but do not write it in the order. You can call the customer's attention to the fact that the order plainly reads that if the price is not satisfactory when announced, he has the privilege of cancelling the order.

"After American prices are out, and we have established our price, it will then be all right for you to insert on the order our price. This is entirely different than writing 12½¢ per bale under the other fellow's price. We dislike to have International, and other American Twine manufacturers' representatives calling around inspecting these orders, and possibly picking one up to send in to their main office."

The next bulletin from the company was dated March 24, 1937. It advised that I. H. C. had made such a low price as to create a serious situation; that appellee should discontinue soliciting orders at prices less than I. H. C.

The orders secured by appellee prior to March 24, 1937, appear to have been accepted by appellant. However, none had been shipped and appellant declined to fill them at 12½ cents per bale below Standard prices. At the increased price only about 25 per cent of the twine ordered was taken by the customers.

Appellant brought this action at law to recover a balance due from appellee for twine sold him. Appellee counterclaimed alleging he was induced to enter into the sales contract by false and fraudulent representations of the price at which the twine was to be sold, made without intention to perform, and that the increase in price resulted in the cancellation of orders taken by him and the consequent loss of commissions thereon. At the trial appellant's account was admitted and the controversy concerned the counterclaim only. The jury allowed appellee's

counterclaim in part and judgment was entered for appellant for the excess of the bill over the counterclaim.

█ █ I. Appellant's motion for directed verdict on the counterclaim was overruled. The motion was based in part upon the theory that the only issue plead and submitted concerned a future promise and not a misrepresentation of any fact and that there was no competent proof that at the time the promise was made there was an intention not to perform it. Error is assigned to the overruling of this ground of the motion.

In support of this proposition appellant relies upon the following cases: City Nat. Bank v. Mason, 192 Iowa 1048, 186 N. W. 30; Rowe Mfg. Co. v. Curtis-Straub Co., 223 Iowa 858, 273 N. W. 895; Security Savings Bank v. Capp, 193 Iowa 278, 186 N. W. 927; Blaul & Sons v. Wandel, 137 Iowa 301, 114 N. W. 899.

So far as material to appellant's contentions these cases hold in substance that fraud cannot be predicated upon the failure to perform a promise or stated intention to do something in the future, unless the statement is made with an existing real intention not to perform. Several of these cases also enunciate the rule that such fraudulent intent not to perform may not be inferred merely from the fact of nonperformance.

However, if the representations relied upon refer to existing facts as distinguished from representations which are wholly promises of future performance, the foregoing rules are not applicable. In this case the representations may be reduced to a statement that the company had worked out a sales program and had definitely adopted for the sales year a policy of pricing the twine at 25 cents per cwt. under the I. H. C. prices. Bulletins to salesmen and order blanks signed by customers confirm this in so many words. The price for the ensuing year was referred to as having been definitely established.

True the yardstick was the I. H. C. price, which could not then be expressed in dollars and cents. But that price appears to have been generally regarded as a standard price placed upon a standard staple. So far as the trade was concerned the Lee price may be said to have been fixed as definitely as though expressed in money or in some other medium, such as bushels of grain to be grown in 1937.

We have held that the state of a man's mind and his in-

tention are facts. City Deposit Bank v. Green, 138 Iowa 156, 115 N. W. 893. However, in the case at bar the representations were more than merely expressions of intention or state of mind. It was represented that the corporation had worked out and adopted this particular sales program and policy. Sioux City Tire & Manufacturing Co. v. Harris, Iowa, 190 N. W. 142. That this representation had reference to some action which had been taken by the board of directors or other proper representatives of the corporation may be fairly inferred. Although the policy of operation, which was represented to have been adopted, referred to the future, it was immediately effective and referred also to the present. Moreover, it was necessarily based upon definite external action which had already been taken by the corporation. Representations which refer to something done in the past are in a different category than representations of intention to do something in the future. Consequently, the case at bar is not governed by the rule of the cited cases requiring proof of (secret) intention not to perform and the overruling of the motion for directed verdict was not error.

██ II. Appellant also contends there was no competent evidence of damages as a basis for the verdict. Appellee was an experienced twine salesman. He was familiar with the industry and conditions which would affect the market and deliveries of twine. He testified that only 5 per cent of twine orders are unfilled in a normal crop season and that the 1937 grain crop was exceptionally good. Nevertheless, various customers did not take deliveries and 75 per cent of the orders in controversy were unfilled. Some customers testified the price increase was the reason for the refusal or curtailment of their orders.

Unquestionably the competition of this twine with standard brands rested largely upon its lower price basis. Obviously dealers could not sell it as readily at the same price as was charged for standard brands. Moreover, some dealers may have preferred not to buy of a concern which appeared to disregard its commitments. Appellant's excuse for the breach was that otherwise it would have operated at a loss. This was not a legitimate excuse, at least as to orders already taken. Huntington v. Jacob Haish Co., 190 Iowa 1197, 181 N. W. 480. It could hardly be called dealing in good faith.

The damages were based upon the claimed loss of commissions on such orders taken by appellee prior to March 24, 1937, as were not accepted by the customers on account of the increase in price. The jury did not allow the full amount claimed by appellee. In cases of this character damages are often incapable of exact determination but where there is substantial evidence of a proper character the damages cannot be said to be wholly speculative and unascertainable. Appellee had incurred expenses and spent time in taking the orders. He had completed the work of making these sales. That he be paid the commissions earned was only substantial justice. Huntington v. Jacob Haish Co., supra; Hichhorn, Mack & Co. v. Bradley, 117 Iowa 130, 90 N. W. 592; Atlas Brewing Co. v. Huffman, 217 Iowa 1217, 252 N. W. 133. We think it was not error to submit this question to the jury.

III. The trial court overruled the motion of appellant for judgment notwithstanding the verdict. The basis for such motion is that the pleadings of the successful party fail to aver some material fact necessary to a complete cause of action or defense. Code section 11553; In re Larimer's Estate, 225 Iowa 1067, 283 N. W. 430. It is sufficient to say there was no such omission in appellee's counterclaim.

The judgment is affirmed.—Affirmed.

HAMILTON, C. J., and STIGER, SAGER, HALE, BLISS, and MILLER, JJ., concur.