NADINE BRICKMAN, appellee, v. DR. DAN TORIELLO, appellant.

No. 47816.

(Reported in 46 N.W.2d 565)

MARCH 6, 1951.

REHEARING DENIED MAY 11, 1951.

Miller, Huebner & Miller, of Des Moines, for appellant.

John Paul Jones and William H. Fulton, both of Des Moines, for appellee.

MULRONEY, J.—Plaintiff's action against the defendant-doctor is based on the charge that he knowingly concealed from her the fact that she was sterile and, relying upon his representations that she was not, she married. The record shows that Nadine Bell was fifteen years old when she married John Boots in 1939. They had two children, and in August of 1943 when Nadine and John were divorced the custody of the children was placed in the husband. Later the children were placed in the custody of Nadine's mother. In the fall of 1943, Nadine consulted Dr. Toriello about some female trouble she was having. About this

same time she became engaged to marry Elwayne Brickman who was about to leave for military service. She had known Elwayne since grade school days. Doctor Toriello treated Nadine and in April or May of 1944 he recommended an operation for the removal of cysts on the Fallopian tubes. She testified the doctor assured her the operation would not prevent her from having children. She was operated on in May 1944, and hospital records of the operation performed show "tubes clipped—stumps buried." Dr. Toriello, who assisted the general hospital surgeon in this operation, denies the correctness of the hospital reports. He states cysts were removed from the tubes but the tubes were not clipped.

A second operation was performed about May of 1946 in which Toriello also assisted. At this time the tubes were removed because they were infected. Elwayne returned from service in May of 1946 and they both testified they went to the doctor's office in June of 1946 and Nadine asked him if she could have children and the doctor replied: "I don't see any reason why you can't." Nadine then testified: "We went ahead with our marriage plans." But it appears without dispute that Nadine consulted some other doctor who told her she could not have children and thereupon she broke her engagement in the first part of October 1946. Nadine, her mother, and Elwayne testified that in the latter part of October 1946 the doctor was called to the home of Nadine's parents—where Nadine had lived since her divorce—and again the doctor was asked if Nadine could have children and the doctor said he knew of no reason why she could not have children. Nadine was sick and in bed at this time and she and her mother both testified the doctor said something to the effect that the two operations might have a tendency to cause a premature change of life.

The doctor denied both conversations and stated that before the second operation he told Nadine and her mother the operation might lessen the possibility of pregnancy.

Nadine and Elwayne were married November 2, 1946. She obtained her medical certificate from Dr. Sloan and about a month after her marriage she returned to Dr. Sloan for some more female trouble. At this time or shortly thereafter, Dr. Sloan, after checking the hospital records of her operations, told

680

her she could not have children—or, to put it in Nadine's words: "He told me if Elwayne and I wanted any children he thought Elwayne would have to have it."

I. On May 27, 1949, plaintiff filed her petition in this case, which, after a number of issues were withdrawn, presents a case based upon fraud. This is not a malpractice suit. It is not a suit for damages for an unauthorized operation. Nor is it a suit for an erroneous conclusion in examination. For such a suit see Harriott v. Plimpton, 166 Mass. 585, 44 N.E. 992. The fraud charged is that the defendant "falsely represented that the surgery performed did not affect conception and procreation, when in truth and in fact said surgery was of such a nature as to sterilize plaintiff." The allegation as to damage is that "plaintiff, believing the information given her by defendant, and in reliance thereupon, married Elwayne." The proof narrows the issue to the alleged October 1946 representation. It appears without question that plaintiff broke her engagement with Elwayne after June 1946 when some other doctor told her she could not have children. The petition charges that defendant knew that the consequences of the surgery was sterility, and the record would probably support a finding that the ordinary and probable result of the two operations, or at least the second, would be sterility. Much of plaintiff's proof was devoted to showing the first operation was unauthorized and plaintiff states in argument that she consented to the second operation and does not here "complain" about it. As we view the case, plaintiff cannot "complain" about either operation in this action. The evidence of the two operations and defendant's participation therein was only admissible to show defendant's knowledge at the time he made the alleged representation in October 1946. The dispute concerning the first operation need not be decided. Admittedly the possibility of pregnancy would be materially lessened after the second, when the tubes were removed. The defendant admits that. The defendant stated that he told plaintiff and her mother before this second operation that the possibility of Nadine having children "after both tubes would be removed" would be lessened. Nadine testified in rebuttal but she did not deny this statement. We need not go into more detail concerning the evidence of defendant's October 1946 representation as to plain-

tiff's condition. Defendant denied making the statements that Nadine, her mother and Elwayne say he made. The evidence, though not strong, was probably sufficient to generate a jury question on the issue of whether the defendant made the representation. And we can also assume that the representation, if made, would go beyond a doctor's permissible assurance to his patient of physical soundness. We might add, however, that the defendant testified that in his opinion it was still possible for Nadine to become pregnant. In this he was supported by Dr. A. Graney who performed the second operation, and who said he once had a patient who had had children after the removal of the two tubes.

II. The essential elements of actionable fraud are: (1) A false representation (2) scienter (3) an intent to deceive (4) reliance, and (5) resulting injury. Rawleigh Co. v. Cook, 200 Iowa 412, 205 N.W. 57; Gipp v. Lynch, 226 Iowa 1020, 285 N.W. 659. Each one of these elements must be established before plaintiff is entitled to recover. We need not decide whether the evidence would be sufficient to establish the first four elements. It is clear plaintiff did not establish any injury. Such an action as is here presented is really not against the doctor in his professional capacity. Krestich v. Stefanez, 243 Wis. 1, 5, 9 N.W.2d 130, 132, 151 A. L. R. 1022, 1025. As said in the cited case it is "outside of, and beyond the relationship of doctor and patient." There is no question but that an action for damages against a third person for fraud in inducing marriage will lie. Beach v. Beach, 160 Iowa 346, 141 N.W. 921, 46 L. R. A., N. S., 98, Ann. Cas. 1915D 216; Leventhal v. Liberman, 262 N. Y. 209, 186 N.E. 675, 88 A. L. R. 782, annotation on 786. But in all of the cases involving such fraud, as in all other cases of fraud, the party seeking recovery must show he has been damaged or injured as a result of the fraud. Indeed the resulting damage is one of the essential elements of fraud and the absence of proof to establish damage means the absence of proof to establish actionable fraud. We said in Steckel v. Million, 210 Iowa 1139, 1141, 231 N.W. 387, 388:

"Because of the record here presented, we are constrained to affirm the judgment and decree entered in the district court.

This conclusion is reached, not, however, on the theory suggested by the district court, that there was fraud without resulting prejudice, but rather, by applying the principle that there can be no actionable fraud in the absence of damage or prejudice."

See Rawleigh Co. v. Cook, 200 Iowa 412, 205 N.W. 57, and Gipp v. Lynch, 226 Iowa 1020, 285 N.W. 659, both supra.

Going first to plaintiff's petition we find the allegation that plaintiff, in reliance upon the truth of the representation, "married said Elwayne." When asked, in effect, if she would have married Elwayne if she had known her condition she replied: "I don't believe I would have." Of course no one knows what course she would have pursued, but so far the pleading and proof would merely mean the alleged fraudulent representation transmuted her indecision whether to marry or not into a decision to marry. Was this a damaging decision? What possible injury or damage was there that a jury could translate into dollars and cents? She says she loved her husband when she married him and that she loves him today. He has provided a home for her and her two children since they were married. But her counsel went on and asked her to describe the effect of her situation—her "own feelings as a wife in connection with the relationship with [her] husband—the things that were passing through [her] heart and mind in this matter." She answered: "Isn't anything I would like any more to have one or two more children. My children would like to have baby brothers and sisters. They can't understand. I don't, just doesn't seem fair."

Plaintiff's counsel admits in his brief that the above quotation from plaintiff's testimony "was virtually the only evidence introduced as to plaintiff's damage." But this evidence merely shows that any suffering plaintiff experiences is caused by the fact that she is probably sterile. The fact that she cannot have children is not a result of the doctor's alleged representation made before marriage that she could anticipate normal conception. There is no evidence that she is the victim of any ill-treatment or indifference by her husband. No one can say from this record that by marrying Elwayne she has entered into a relationship injurious to her. For all that appears in this record we can presume plaintiff and her husband are living together in

complete matrimonial harmony. The record fairly shows she bettered her condition by marrying Elwayne. It is possible they will be denied the marital bliss of children—and distress over the fact she probably cannot have children is apparently the only injury she suffers. But this plight results from the operations. It is not a result of the alleged false representation. It existed before the alleged representation. Under her pleading and proof all that resulted from the false representation was marriage with Elwayne. It would be strange indeed to hold that one who is living in marital concord with a man she loves is *damaged* by her change of status from single to married. No support for such a conclusion is to be found in any decision we have been able to find. Plaintiff wholly failed to prove any damage resulting to her by reason of the alleged fraudulent representation. This was one of the essential elements of her case. The motion for judgment for defendant notwithstanding verdict should have been sustained. The cause is reversed and remanded for judgment for defendant on plaintiff's action against defendant.—Reversed and remanded.

WENNERSTRUM, C. J., and BLISS, OLIVER, SMITH, HAYS, and THOMPSON, JJ., concur.

MANTZ, J., not sitting.