JOE G. LAMASTERS, appellee, v. GEORGE H. SPRINGER, JR., d/b/a FACTORY DIRECT DISTRIBUTING COMPANY, appellant.

No. 49832.

(Reported in 99 N.W.2d 300)

November 17, 1959.

I. Joel Pasternak, of Des Moines, for appellant.

Lawrence E. Myers, of Des Moines, for appellee.

Garrett, J.—This is an action at law to determine whether the statements and representations made by the defendant and his agent to plaintiff were such as to constitute fraud and deceit inducing plaintiff to put up a $250 cash bond and enter into an agreement with defendant known as Exhibit "B" wherein plaintiff was engaged as an exclusive, franchised "manufacturers' representative" or "county agent" in Grundy County, Iowa, for the sale and distribution of defendant's products and merchandise.

Plaintiff alleged he was induced to enter into the execution of Exhibit "B" by representations made by the defendant and his agent that plaintiff would be given training by defendant as a county agent; that defendant would spend $2000 to $3000 in newspaper promotional advertising in Grundy County, Iowa, within ninety days after the execution of Exhibit "B" for the aid and assistance of plaintiff in making sales; that defendant advised plaintiff to disregard the express terms of the contract relating to the $250 cash bond which plaintiff had deposited with defendant, and which defendant stated would be returned to plaintiff within ninety days notwithstanding the terms of the written agreement.

The errors relied upon for reversal are: (1) The court erred in overruling the defendant's motion for a directed verdict made at the conclusion of the plaintiff's evidence for the reasons (a) the plaintiff failed to sustain the burden of proving a material misrepresentation of an existing fact and (b) the plaintiff failed to prove that, if there was any misrepresentation, he was defrauded thereby. (2) The court erred in overruling the defendant's motion for judgment notwithstanding the verdict (this motion on same grounds as the motion to direct verdict) claiming (a) that the evidence actually shows a substantial performance regarding promotional advertising by defendant. (3) The court erred in overruling defendant's motions for a new trial—(a) Instruction No. 6 to the jury was erroneous in that it was a misstatement of the law and was confusing and misleading. (b) Instruction No. 10 was erroneous in that it was a misstatement of the law as to the rule governing measure of damages.

I. The defendant claims plaintiff failed to sustain the burden of proving a material misrepresentation of an existing fact or that he was defrauded thereby if there was such misrepresentation. He contends "The mere failure to perform a promise or intention in futuro which may have been an inducement to executing the contract, is not, in itself, proof of fraud unless the promise is made with a secret intention of not carrying out the promise or expressed intention." In support thereof appellant cites the following cases: In re Estate of Harker, 113 Iowa 584, 85 N.W. 786; Farmers Savings Bank v. Weeks, 209

Iowa 26, 227 N.W. 508; Security Savings Bank v. Capp, 193 Iowa 278, 186 N.W. 927; Rowe Mfg. Co. v. Curtis-Straub Co., 223 Iowa 858, 273 N.W. 895; State Bank of Fort Dodge v. Central Flour & Feed Co., 227 Iowa 596, 288 N.W. 614; 23 Am. Jur., Fraud and Deceit, 794; Williams v. Cohn, 201 Iowa 1121, 206 N.W. 823.

So far as material to appellant's contention these cases hold in substance that fraud cannot be predicated upon the failure to perform a promise or stated intention to do something in the future, unless the statement is made with an existing real intention not to perform, and some of these cases say or imply that such fraudulent intent not to perform may not be inferred merely from the fact of nonperformance. We agree with the holding of these cases.

"We have held that the state of a man's mind and his intention are facts. City Deposit Bank v. Green, 138 Iowa 156, 115 N.W. 893." Lee & Son Co. v. Sundberg, 227 Iowa 1375, 1379, 291 N.W. 146, 149.

"While it is true that a simple promise to do something in the future cannot alone be made the basis of fraud, yet when such promise is made with intent to breach it in the future, it is satisfactory proof of fraud. See, Blaul & Sons v. Wandel, 137 Iowa 301; City Deposit Bank v. Green, 138 Iowa 156; and 26 C. J., 1093, sec. 26, et seq." Bruner v. Myers, 212 Iowa 308, 312, 233 N.W. 505, 506, 235 N.W. 726; 37 C. J. S., Fraud, section 12.

In Scheel v. Superior Mfg. Co., 249 Iowa 873, 884, 89 N.W.2d 377, 384, we said, "* * * if the promise was made without intention of performance and for the purpose of inducing action the misrepresentation was of an existing fact, not merely a promise of future conduct. Many Iowa decisions and the weight of authority generally support this conclusion." (Citing cases)

The essential elements of actionable fraud are: (1) A false representation (2) scienter (3) an intent to deceive (4) reliance, and (5) resulting injury. Brickman v. Toriello, 242 Iowa 677, 46 N.W.2d 565; Rawleigh Co. v. Cook, 200 Iowa 412, 205 N.W. 57; Gipp v. Lynch, 226 Iowa 1020, 285 N.W. 659,

The plaintiff must establish each of these items before he is entitled to recover.

■ "Parol evidence is admissible to prove fraud that induced the writing." Scheel v. Superior Mfg. Co., supra (page 880 of 249 Iowa); 32 C. J. S., Evidence, section 979a; 24 Am. Jur., Fraud and Deceit, section 267.

■ We come now to the difficult question whether or not there was sufficient competent evidence in the record to take the case to the jury. This question can be determined only by a careful examination of the evidence.

Plaintiff testified: "I received a caller who identified himself as being Mr. Darrell Cochran, a district supervisor for Factory Direct Distributing Co. That Mr. Cochran and I discussed terms of employment during that conference. That Mr. Cochran told me that Factory Direct Distributing Co. would furnish between $2000 and $3000 of advertising in Grundy County in the first ninety days. * * * Mr. Cochran told me that Factory Direct Distributing Co. had over forty dealers, experienced, operating in the State of Iowa, and that they had been in business a year and a half. * * * I saw Mr. Springer the following Sunday and he told me that a cash bond would have to be deposited upon signing of the written contract in the amount of $250. Q. And what, if anything, was discussed about the duration of the bond or when the bond was to be returned? A. I was to receive the bond back in sixty to ninety days. Q. And who made this representation to you about the return of the bond? A. Mr. Springer and Mr. Cochran both.

"Mr. Springer told me that he would spend $2000 to $3000 in Grundy County for advertising in the first ninety days, starting with an original mailing brochure. * * * Mr. Springer refused to return my bond and told me that I had not lived up to the contract. * * * I terminated my sales agency with Mr. Springer on July 30, 1958. That my earnings from sales work with Factory Direct Distributing Co., from March 30th to July 31st was in the amount of $125. * * * That the only advertising or other promotional matters by Factory Direct within Grundy County within ninety days from the date of the agreement, that I know of definitely, was the original mailing brochures mailed to customers, or potential customers, within Grundy County,

and according to Factory Direct's figures, was in the amount of 1903 brochures at a cost of 7½¢ apiece. * * * Q. Mr. Lamasters, to the best of your knowledge did Mr. Springer conduct a direct mailing program to your resident customers of Grundy County, Iowa? A. To my knowledge Mr. Springer made no full-fledged direct mailing to my customers. Q. Mr. Lamasters, did Mr. Springer give your customers the prompt, courteous service and delivery of merchandise and materials as was represented to you before you entered into this agreement with him? A. Definitely not. * * * Q. Mr. Lamasters, will you state whether or not you relied upon Mr. Springer's representations before you executed this writing? A. I relied upon him. * * * during the sixteen-week period of my employment I worked approximately 40 to 44 hours per week with the exception of one week * * * I was in the Veterans Hospital * * *."

Plaintiff said "* * * Mr. Cochran told me that Factory Direct Distributing Company would furnish between $2000 and $3000 of advertising in Grundy County in the first ninety days", and that Mr. Springer told him the same thing. The most plaintiff could claim for these statements is that they were promises in futuro.. Without advertising plaintiff could no doubt, by dint of personal solicitations and hard work, accomplish some sales of merchandise, but the jury would be amply justified in finding that the promise of the investment of from $2000 to $3000 in advertising in Grundy County was one of the inducements offered plaintiff to get him to enter into the desired contract. Did Mr. Springer intend to perform this promise when he made it? The jury, on the record, could find it was made and not substantially kept. Catalogues costing $200 were delivered to plaintiff and 1903 brochures costing 10¢ each were mailed to Grundy County prospects. Advertising in a Des Moines newspaper and by radio outside of Grundy County would not be within plaintiff's promise that "he would spend $2000 to $3000 in Grundy County for advertising in the first ninety days."

The fact the agreement was not performed does not alone prove the promisor did not intend keeping it when it was made, but such nonperformance would be a circumstance to be considered especially if not explained. The defendant denies any such promise or representation and therefore offers no explana-

tion. Defendant was starting a new business and it is not difficult to understand why he did not and perhaps could not spend that amount of money in Grundy County within ninety days. It would be easy to deduce from the evidence that if defendant made such promise he did not have any intention when he made it of performing it and that it was made solely to induce plaintiff to sign Exhibit "B" and put up his $250 cash bond. As regards the cash bond, plaintiff testified, "Q. And what, if anything, was discussed about the duration of the bond or when the bond was to be returned? A. I was to receive the bond back in sixty to ninety days."

The jury could find defendant, prior to the signing, told plaintiff to disregard the provision of the written contract regarding the bond, thereby offering an additional inducement to sign, with no intention of keeping this agreement.

Mr. Lamasters testified, "That Mr. Cochran told me that Factory Direct Distributing Co. had over forty dealers, experienced, operating in the State of Iowa, and that they had been in business a year and a half." This was a representation as to a past and present existing fact. It was false, as Cochran knew, and was no doubt made to induce plaintiff to enter into the contract with defendant. Cochran does not expressly deny such representations but testified, "I don't remember telling Mr. Lamasters that this business was in operation for a year and a half and had 40 franchised agents." Mr. Springer testified, "On March 21, 1958 * * * I had given out six, eight or ten dealer franchises. Maybe more, I can't recall. * * * March 30, 1958 was the beginning of the operation."

Plaintiff had been led to believe he was dealing with a well-established and going concern. It will be observed that Springer had given out six to ten franchises, only, and that his operations began on March 30, 1958, rather than a year and a half earlier as Cochran is alleged to have stated.

These were gross misrepresentations of present existing facts and could have been put forth only to deceive and defraud Lamasters. He maintains he relied upon the representations and was induced thereby to enter into the contract, to his serious detriment. If plaintiff was induced by fraud and deceit to enter into the contract he cannot be bound by its terms. Bonewell &

Co. v. Jacobson, 130 Iowa 170, 106 N.W. 614, 5 L. R. A., N. S., 436; Pictorial Review Co. v. Fitz Gibbon & Son, 163 Iowa 644, 145 N.W. 315; McTee & Co., Inc., v. Ryder, 221 Iowa 407, 265 N.W. 636; Hall v. Crow, 240 Iowa 81, 89, 34 N.W.2d 195, 200. "It was for the jury to say whether, under all the circumstances, the representations made were opinions or statements of fact." Hall v. Crow, supra.

Before plaintiff is entitled to recover he must establish the five essential elements of actionable fraud above set out.

The jury could reasonably find, on the record here, that these essential elements were proven by a preponderance of the competent evidence. Actual damage or injury to plaintiff is an essential element of an action for deceit. 24 Am. Jur., Fraud and Deceit, 100; Brickman v. Toriello, supra. There was evidence in the record from which the jury could return the verdict of $750 for plaintiff. See Sutter v. General Petroleum Corp., 28 Cal.2d 525, 170 P.2d 898, 167 A. L. R. 271; Hanlon v. Macfadden Publications, 302 N. Y. 502, 99 N.E.2d 546, 24 A. L. R.2d 733.

II. The errors relied upon for reversal are set out above and relate to the overruling of defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

From a careful examination of the record and for the reasons set out above we are abidingly convinced and hold that the court did not err in overruling said motions. Appellant complains of Instructions No. 6 and No. 10 given to the jury. In view of what we have said above we need give no further consideration to Instruction No. 6.

Instruction No. 10 states: "The elements of plaintiff's recovery, if you find him entitled to recover would be: * * * (b) Such a sum as you find will compensate him for loss of earnings, if any, that plaintiff suffered on account of said fraud and misrepresentations, if any * * *."

If plaintiff suffered any loss it was in earnings. We find this instruction not vulnerable to the attack made upon it.

Defendant cites and quotes extensively from Hanlon v. Macfadden Publications, supra, and we adopt and quote from the same authority (at page 511 of 302 N. Y., page 551 of 99 N.E.2d, page 740 of 24 A. L. R.2d) : "The measure of damages

in an action for deceit is firmly established. Plaintiff is entitled to indemnity for the actual pecuniary loss sustained as a direct result of the wrong. [Citations] The instant case, while unusual on its facts, clearly calls for the application of this general rule. Plaintiff, of course, was not induced to part with any tangible object such as land, chattels or money as in the typical case of deceit. Instead, he parted with personal services. He was induced to render those services for a price fraudulently lowered. * * * The true measure of damages here is the difference between the value of plaintiff's services and the price he was actually paid for them by reason of defendant's deceit."

See also Alder v. Crosier, 50 Utah 437, 168 P. 83; Sutter v. General Petroleum Corp., supra, 28 Cal.2d 525, 170 P.2d 898, 167 A. L. R. 271.

The judgment of the trial court should be and it is affirmed. —Affirmed.

All JUSTICES concur.

OLIVER, J., concurs in result.