LALIA J. BRUNER, Appellant, v. CARLOS U. MYERS et al., Appellees.

No. 40157.

DECEMBER 9, 1930.

SUPPLEMENTAL OPINION APRIL 14, 1931.

Fred E. Egan and Wm. P. Welch, for appellant.

C. W. Kellogg, for appellees.

ALBERT, J.—Freelinghuysen W. Myers died July 31, 1912, leaving a will, the material part of which in this case was that he gave an undivided one-half of all of his property to his wife, Margaret E. Myers, and the other undivided one-half was divided equally among Carlos U. Myers and Stephen A. Myers, brothers, and Lalla J. Myers, a grandchild. At the time of his death he was possessed of 540 acres of land in Harrison County, Iowa, and 480 acres in North Dakota. There was an incumbrance of $13,000.00 on the Iowa land and $1,500.00 on the North Dakota land. The two brothers divided the Iowa land, Stephen taking 200 acres and Carlos 340 acres, and the incumbrance was divided between them, Stephen assuming $8,000 and Carlos $5,000.

In February, 1923, the plaintiff herein, Lalla J. Myers, (who in the intervening time had married one Bruner) with her husband, joined in a quitclaim deed to Carlos U. Myers conveying her interest in the 340 acres taken by Carlos, and also another quitclaim deed to Stephen for the 200 acres taken by him. The action now pending is brought by the plaintiff against her father, Carlos U. Myers, to set aside the aforesaid quitclaim deed made in his favor on the ground that the same was procured through fraud. While Stephen Myers is made a party defendant by order of court, no attack is made upon the deed made to him, the action being directed wholly to a cancelling or setting aside of the quitclaim deed made to Carlos U. Myers.

It is quite unnecessary to set out the evidence in the case, but we will content ourselves with the conclusions we reach deducible therefrom.

The plaintiff here was a young woman, inexperienced in business and business methods, who by her grandfather's will was entitled to an undivided one-sixth of all of the property which he left. Defendant, Carlos, testifies that this consisted of the aforesaid 540 acres of Iowa and 480 acres of North Dakota land. From the time of the grandfather's death in 1912 to the time of the making of this deed, the plaintiff received nothing whatever in the way of rents or profits from any of this land, although the Iowa land at least had been occupied

all of this time by her father and her uncle. Sometime in 1922, Carlos commenced to negotiate with the daughter for her one-sixth interest in this property, and proposed to trade her what is known in the record as the "Chambers land", consisting of 160 acres of Missouri River bottom land in Harrison County for her interest in her grandfather's estate. He testifies that he figured her share in the estate to be of the value of about $11,000.00. The Chambers land was incumbered by two mortgages, a first mortgage of $12,000.00 and a second mortgage of $14,000.00, making a total of $26,000.00. For the equity in the Chambers land, the father traded to Chambers the equity in the North Dakota land which he says was figured in at $10,000.00, and the title to the Chambers land was made to the plaintiff. In addition to this equity in the Chambers land, the father and the uncle each paid to the plaintiff $500 in cash, also paid two debts against the grandfather's estate amounting to about $1,600.00. The father made payment of his $500 by furnishing seed and planting the Chambers farm for the plaintiff, and Stephen paid his $500 in cash.

Carlos represented to his daughter that the equity in the Chambers land was worth $10,000.00, and that, plus the $1,000.-00 amounted to $11,000.00, which he says was her share in the grandfather's estate. She testifies that she never knew the value of her interest in her grandfather's estate except as told to her by her father; that she never looked at the Chambers land before the deed was made, and that her father importuned her many times before she finally consented to make this deal; that she hesitated about making it because she thought it too heavy a burden to assume, but her father persisted until she finally took his advice and made the deal. She asserts that her father told her if she would take this land he would help her and see that she would not lose her interest; that he would see her through; that she wouldn't lose the land; that he told her this land was worth as much as that of her Uncle Stephen and he always considered Stephen's farm one of the best in the country; that the land was worth what was against it and had a $10,000.00 equity in it in addition thereto; that while she hesitated all summer to make this deal, her father urged her so to do and suggested that he would see her through and she would not lose any part of her estate.

The brother, Stephen, testifies that the defendant Carlos told the plaintiff "if she would take the place he would help her to see she would not lose her interest". Plaintiff's husband testified to the same statement.

The Chambers farm was cut with a ditch which was constructed to straighten Willow Creek.

The defendant, Carlos, at another place in his testimony says: "I admit the Chambers land was inflated about $4,000.00." If we accept this valuation of the Chambers land thus fixed by the father, there would only be an equity of $6,000.00 in the land, whereas he represented to his daughter the equity was of the value of $10,000.00.

One witness described the Chambers land as follows:

"Some of the land lies along the foothills and then there is a portion of it first bottom and there is a portion in the hills, very rough land. The buildings are on the east side of the road on the rough piece of land and the hills are not subject to cultivation."

Another witness estimated the value of the improvements on the Chambers land at $1,800.00. Plaintiff's witnesses estimated the value of the land at $175 an acre, while defendants' witnesses placed the value in the neighborhood of $200 an acre, and some as high as $225.00. These witnesses, however, show they do not give consideration to the great deflation in land values in this State from 1922 forward.

Without further elaboration of the testimony, we feel in view of the evidence, there can be but one conclusion reached in this case, and while, of course, the plaintiff has the burden of establishing her case, the fact that the relation between the grantor and the grantee of the deed is that of daughter and father, does not bring the matter within the confidential rule, yet does require that the transaction be scanned with care. In equity, fraud may be inferred from the intrinsic nature and the subject of the bargain. Where one party acquires an unconscionable and inequitable advantage of the other, equity will infer fraud and give relief. Taking it all in all, a chancellor in equity can reach but one conclusion in the light of this evidence and that is, that the plaintiff was overreached and defendants gained an inequitable and unconscionable advantage

in this transaction. While it is true that a simple promise to do something in the future can not alone be made the basis of fraud, yet when such promise is made with intent to breach it in the future, it is satisfactory proof of fraud. See, Blaul & Sons v. Wandel, 137 Iowa 301; City Deposit Bank v. Green, 138 Iowa 156; and 26 C. J., 1093, sec. 26, *et seq.*

We conclude that the prayer of the plaintiff's petition for a cancellation and setting aside of this quitclaim deed to the 340 acres acquired by the father under it should have been granted, and the court erred in not so holding.—Reversed.

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING

PER CURIAM.—No partition was prayed for between the plaintiff and her father. The decision restores appellant to her original rights, the same as though the deed had never been given. She specifically stated that she made no claim against her uncle, Stephen A. Myers; hence the court could make no pronouncement as to the deed made to him.

The matter of improvement put upon the land and the encumbrance were not involved in this transaction, and can only be determined in a partition between the parties, as they were not made issues in the case.

Otherwise, the petition for rehearing is overruled.