ANDER BOOTH, Appellant, v. LORENO MANN et al., Appellees.

No. 46454.

APRIL 4, 1944.

Carl V. Burbridge and Roy E. Havens, both of Logan, for appellant.

Michael Murray, of Logan, and Hugh J. Tamisiea, of Missouri Valley, for appellees.

MILLER, J.—Certain facts herein are not seriously disputed. In 1940, plaintiff, Ander Booth, was seventy-four years old and in ill health. In 1935, he had married Ella Booth, his third wife. Defendant Loreno Mann is Booth's daughter by a former marriage. Defendant Floyd Mann is Loreno's husband. Booth's only other living child, a daughter, is incompetent. On September 3, 1940, Booth and his wife conveyed by quitclaim deed to Loreno Mann a farm in Harrison county containing approximately 290 acres, which Booth had owned for forty-seven years. At that time there were two mortgages on the land. The first mortgage, to the Federal Land Bank of Omaha, amounted to $7,576, of which $1,698.90 was then delinquent. The second mortgage, a commissioner's loan, amounted to $2,619.48, of which $1,019.48 was then delinquent. Accordingly, the two mortgages amounted to $10,195.48, of which $2,718.38 was then delinquent. Unpaid taxes amounted to about $400, some of which had been paid by the mortgagee and added to the mortgage indebtedness. The leases for 1940 had been assigned to the land bank and it was threatening foreclosure. Booth had no other property and was contemplating applying for an old-age pension. Ill health and unfavorable crop years appear to have produced Booth's desperate financial situation.

After the farm was conveyed to Loreno Mann she assumed both mortgages; the new leases were assigned to the mortgagee land bank; practically all of the income from the land was applied on the indebtedness, and, due to favorable farm prices and experience, the situation became greatly improved. At the time of trial $2,300 had been paid upon the delinquencies and the mortgages were considered good loans. In September 1940, the secretary of the National Farm Loan Association considered that the market value of Booth's farm was $32.50 per acre. At the time of trial he considered it to be between $37.50 and $42.50 per acre. Other evidence was similar. The market value of the farm in September 1940 appeared to be less than the encumbrances against it. At the time of trial, due to reduction of the mortgages and increase in the market value of the farm, there

appeared to be an equity over the encumbrances. After the deed was executed plaintiff applied for and received an old-age pension, which he was still receiving at the time of trial. This action was commenced in March 1943. Trial was had in July and August 1943. Decree was entered August 26, 1943.

Plaintiff's petition as amended contained the following allegations: On September 3, 1940, plaintiff owned the farm, subject to the mortgages and unpaid taxes. He was weak in mind and body and in financial distress. He reposed trust and confidence in his daughter, Loreno. She deceitfully represented to him that, if he would convey the farm to her, it would remain his property; he and his wife could live on it in the set of buildings they then occupied; Loreno and her husband would move onto the farm and occupy another set of buildings thereon, would retain a reasonable amount of the income for their living and operating expenses and apply the balance on taxes and mortgage indebtedness; they would endeavor to sell the farm for more than the taxes and mortgages and would pay the excess to plaintiff. Relying thereon, plaintiff conveyed the farm to Loreno. She paid no consideration therefor. Defendants failed to move onto the farm; leased it; failed to apply the income on the taxes and mortgages; gave plaintiff written notice to quit; made no effort to sell the farm, although an amount can now be realized in excess of the encumbrances. Defendants now claim that Loreno is the unqualified owner and is not bound by any condition or obligation to plaintiff. Plaintiff also assigned to Loreno sixty shares of stock in the Moorhead National Farm Loan Association as a part of the transaction and she paid no consideration therefor. Loreno's statements to plaintiff were false and fraudulent and the consideration for the conveyance of the farm and transfer of the stock has failed. Plaintiff is now destitute. He offers to do equity and to hold defendants harmless from any contractual obligations assumed in connection with the farm. The prayer was that the deed be canceled, that title to the farm be quieted in plaintiff, the shares of stock be reassigned to plaintiff, and for general equitable relief.

Defendants' answer to the petition as amended admits certain allegations and denies others. Defendants admit plaintiff's former ownership of the farm, the relationship of the parties, the

conveyance of the farm and stock to Loreno; that the encumbrances amounted to approximately $10,195.48; that plaintiff owned no other property and, after conveying the farm, was destitute; that defendants served two notices on plaintiff to quit the farm, and that Loreno claims to be the unqualified owner without any condition or obligation in favor of plaintiff. They admit agreeing to apply the farm income toward taxes, interest, and principal, and allege that that was done. They admit that, if the farm was sold for more than the encumbrances, the net proceeds were to go to plaintiff, but allege that this promise was limited to one year from the conveyance. They admit that they promised to move onto the farm, but allege that such promise was conditioned on their being able to finance the purchase of machinery, etc., and assert that they were unable to secure the necessary financing. They deny the other allegations of the petition as amended, particularly the allegations of mental weakness of plaintiff, fraud, deceit, fiduciary relationship, and failure of consideration. They assert that a part of the consideration was the assumption of the mortgages by Loreno and that plaintiff is now estopped to question the validity of the deed. The prayer was that the action be dismissed and for general equitable relief.

The court found the following facts: In 1940 the market value of the farm was less than the encumbrances against it; the consideration for the deed was certain promises made to plaintiff to be performed by Loreno; there is not much conflict as to what the promises were except that defendants would limit them as to time of performance; the promise that plaintiff was to live in the "big house" until the farm was sold or foreclosed was not breached because he is still living there; the service of the notices to quit did not deprive him of his rights and did not constitute a failure of consideration; the promise to apply the income toward payment of interest, taxes, and reduction of the mortgages has been complied with; the failure of defendants to farm the land was due to inability to secure capital, machinery, and equipment, but they have lived in the vicinity, have assigned the leases to the Federal Land Bank and have looked after the property; efforts have been made to sell the farm and the fact

that defendants claimed at the trial herein that such agreement was limited to one year, which the court does not find to be established by the evidence, does not establish failure of consideration. The court found that no confidential relationship existed, no undue influence was exercised, no fraud was perpetrated; plaintiff failed to establish failure of consideration. The court also found that neither party "sought by their pleadings to have determined by the court what the respective rights of the parties plaintiff and defendant may be in the land in controversy and that is not herein determined." The court entered decree dismissing the action, "leaving undetermined and without prejudice, the rights, if any, that plaintiff may have to settle or litigate in a proper case the question of his right of possession of the big house, or right to any of the proceeds of said land when sold." Plaintiff appeals to this court.

Plaintiff asserts the following eight propositions in this court, to wit: (1) Defendants' promises, made as consideration for the deed, were not limited to one year from the conveyance (2) the consideration for the deed has failed (3) Loreno assumed a fiduciary relationship and (4) she has the burden of proving the bona fides of the transaction (5) the deed was obtained by fraud and deceit (6) repudiation of the promises Loreno made raises a presumption that she did not intend to perform them in the first instance and that the contract was fraudulent in its inception (7) the transaction, if sustained, would result in serious loss to plaintiff and inequitable and unconscionable advantage to defendants (8) the record requires cancellation of the deed and general equitable relief to plaintiff.

We are satisfied that the first and seventh contentions have merit. We are unable to sustain the other contentions. We think that the court erred in dismissing the action. The record does not warrant the relief that plaintiff specifically prays for but does warrant and require consideration under the prayer for general equitable relief. See Wagner v. Northern Sec. Co., 226 Iowa 568, 574, 284 N. W. 461.

As pointed out by the trial court, the principal conflict in the evidence related to the question whether the promises defendants made to plaintiff were limited as to time. It would unduly prolong this opinion to set out the evidence. While the

trial court did not squarely decide the issue, its findings are definitely favorable to plaintiff. After carefully reviewing the evidence, we hold that plaintiff is entitled to a specific adjudication herein in his favor on this issue and to a decree which will protect his rights. We find and hold that defendants hold the legal title for the benefit of the plaintiff and are obligated to permit plaintiff to occupy the buildings now occupied by him, referred to as the ''big house,'' as long as he shall live and the farm remains unsold and the mortgages are not foreclosed. In the meantime, defendants are entitled to use the income from the farm for necessary operating expenses (including necessary living expenses should they live upon and farm the land), but all income in excess thereof must be applied on taxes and the mortgage indebtedness. Defendants are obligated to use due diligence to sell the farm, and when it is sold plaintiff is entitled to receive all sums over and above the amount of the taxes and mortgages.

Plaintiff seeks to bring this case within the rule announced by us in Bruner v. Myers, 212 Iowa 308, 311, 312, 233 N. W. 505, 506, 235 N. W. 726, wherein the record supported the following statement:

''* * * while, of course, the plaintiff has the burden of establishing her case, the fact that the relation between the grantor and the grantee of the deed is that of daughter and father, does not bring the matter within the confidential rule, yet does require that the transaction be scanned with care: In equity, fraud may be inferred from the intrinsic nature and the subject of the bargain. Where one party acquires an unconscionable and inequitable advantage of the other, equity will infer fraud and give relief. Taking it all in all, a chancellor in equity can reach but one conclusion in the light of this evidence and that is, that the plaintiff was overreached and defendants gained an inequitable and unconscionable advantage in this transaction. While it is true that a simple promise to do something in the future can not alone be made the basis of fraud, yet when such promise is made with intent to breach it in the future, it is satisfactory proof of fraud. See, Blaul &

Sons v. Wandel, 137 Iowa 301; City Deposit Bank v. Green, 138 Iowa 156; and 26 C. J., 1093, sec. 26, et seq.''

The facts of that case were very different from those now before us. Here there was no false representation as to an existing fact. The fact that defendants now repudiate any obligation to plaintiff does not bring the case within the rule that a repudiation of a promise may constitute evidence that defendants had no intention of keeping the promises they made, so that the promises were fraudulent of themselves. As pointed out by the trial court, a substantial portion of the promises was kept. Defendants undertook to save the farm from foreclosure. This has been done. To accomplish that, Loreno was required to assume the two mortgages. This she did in writing. The income was to be applied to reduce the encumbrances. This has been substantially complied with. A dispute has arisen as to just when the promises were to be performed. There is a threat of refusal to perform in the future. This is not sufficient to warrant cancellation of the deed, particularly since defendants cannot now be placed in status quo as regards Loreno's written assumption of the two mortgages.

In the case of Gardner v. Lightfoot, 71 Iowa 577, 580, 32 N. W. 510, 512, we stated:

''But his agreement must be regarded as a condition subsequent; and, as the conveyance has been fully executed and delivered, the rule is that it will not be set aside when, at least, there has been partial performance, and the parties cannot be placed in the same position they were in at the time the conveyance was made.''

This pronouncement was expressly followed in Bonniwell v. Madison, 107 Iowa 85, 89, 77 N. W. 530, and Galt v. Provan, 131 Iowa 277, 280, 108 N. W. 760.

In addition to the foregoing proposition, a decree establishing plaintiff's right to continue to occupy the buildings now occupied by him, to have the income of the farm applied on the taxes and mortgages, to have the farm sold forthwith, and to receive the proceeds of any sale over and above the taxes and en-

682

cumbrances against the property will give plaintiff adequate relief.

By reason of the foregoing, the decree is reversed and the cause is remanded for the entry of a decree in harmony with this opinion.—Reversed and remanded.

All JUSTICES concur.